501 So.2d 1136 (1986)
Ex parte City of Dothan, Alabama.
(Re CITY OF DOTHAN, Alabama
v.
Betty Ruth HOLLOWAY).
84-1316.
Supreme Court of Alabama.
July 25, 1986.
Rehearing Denied September 12, 1986.
Rehearing Denied October 10, 1986.
William M. Jackson, Dothan, for petitioner.
Fred M. Tatum, Jr., Dothan, for respondent.
J. Wilson Dinsmore, Larry Waites, and M. Wayne Wheeler, Birmingham, amici curiae for Peggy Haynes and Erick Hayes and members of the class they represent in support of Betty Ruth Holloway.
J. Doyle Fuller, Montgomery and George Beck of Baxley, Beck, Dillard & Dauphin, Montgomery, amici curiae for James Clyde Brown and the class he represents in Montgomery Circuit Court in support of Betty Ruth Holloway.
Charles A. Graddick, Atty. Gen., and Jack M. Curtis and Leura J. Garrett, Asst. Attys. Gen., amici curiae for State of Ala.
Sam LeMaistre, Jr., President and Chairman of the Executive Committee, and Joseph M. Carlton, Jr., Executive Director of the Alabama Dist. Attys.' Ass'n, amicu curiae in support of City of Dothan.
Drayton Hamilton, Montgomery, amicus curiae Ala. League of Municipalities in support of City of Dothan.
TORBERT, Chief Justice.
Betty Ruth Holloway was arrested and charged with driving under the influence, on March 5, 1984, pursuant to an Alabama Uniform Traffic Ticket and Complaint (hereinafter "UTTC" or "ticket"). Holloway pleaded guilty and paid a fine of $500 plus court costs. On May 7, 1984, Holloway was arrested and charged with "driving while license or privilege suspended," the charge being pursuant to a UTTC. She also pleaded guilty to this offense and paid a fine. Although each of these tickets was signed by the arresting officer, neither *1137 ticket was sworn to and acknowledged before a judge or magistrate.
Following this Court's decision in Ex parte Dison, 469 So.2d 662 (Ala.1984), Holloway filed the present proceeding in the Circuit Court of Houston County. In this action, Holloway sought to have the two convictions set aside and vacated and sought a refund of the fines she had paid. The trial court granted the relief sought, and the Court of Criminal Appeals summarily denied the City of Dothan's petition for a writ of mandamus, based on Dison, supra, and Ex parte McCurley, 412 So.2d 1236 (Ala.1982). We granted the City of Dothan's writ of certiorari in order to determine whether the holding in Dison should be applied retroactively.
The parties, and numerous amici curiae, have provided the Court with exceptional briefs on both the question of whether Dison should be applied retroactively and the issue presented in Dison itself. This case has therefore given the Court an excellent opportunity to re-examine the numerous opinions issued by this Court and our former Court of Appeals on the issue decided in Dison. Having conducted that re-examination, we have come to the conclusion that the Dison case was incorrectly decided.
In Dison, this Court reversed the defendant's conviction for driving under the influence because the ticket issued to the defendant had not been verified before a judicial officer. The opinion in Dison concluded that this lack of verification of the ticket prevented the district court, and subsequently the circuit court on appeal, from obtaining subject matter jurisdiction, and thus, that the defendant's conviction was void. 469 So.2d at 664. There are, however, numerous cases decided prior to Dison that reflect the position that the lack of verification of the ticket would only affect the trial court's ability to obtain jurisdiction over the person and not its ability to obtain jurisdiction of the subject matter. In that respect, the failure to have the ticket verified is a defect that could be waived by the defendant by proceeding to trial in the district or municipal court without objecting to the defect at that time.
In Woolf v. McGaugh, 175 Ala. 299, 57 So. 754 (1911), this Court set forth the two elements that are necessary for a trial court to obtain proper jurisdiction to try a case. The Court differentiated the two elements by making the following statements:
"Jurisdiction in personal actions depends upon two elements: The subject-matter to be adjudged; the presence in court of the parties whose rights are to be affected by the judgment. In respect of subject-matter, the court acquires jurisdiction by the act of its creation; it is inherent in the constitution of the court. The other element it acquires by its own act, by its process properly issued and served, or by voluntary appearance of the defendant."
175 Ala. at 303, 57 So. at 755.
See also, Goulden v. State, 292 Ala. 704, 705, 299 So.2d 325, 326 (1975) (citing Woolf, the Court held that the trial court had jurisdiction of the subject matter, i.e., the crime, even though the grand jury foreman had not endorsed the indictment as a "true bill"); Sherrod v. State, 197 Ala. 286, 288, 72 So. 540, 541 (1916) (citing Woolf, this Court held that where a trial court has jurisdiction of the subject matter, "the jurisdiction of the person could be acquired only by service of its process, or a voluntary appearance of the defendant"). The statement made by this Court in Woolf dictates the conclusion that a court obtains jurisdiction of the subject matter by law and not from any action of the court itself. Since that is so, the district court in Dison properly obtained jurisdiction of the subject matter, i.e., the traffic offense of DUI, pursuant to Code 1975, ง 12-12-51 ("District court jurisdiction of misdemeanor prosecutions for traffic infractions"). Therefore, the fact that the ticket in the Dison case was not verified would not affect the district court's jurisdiction of the subject matter. Instead, the lack of verification would more directly affect the question of whether the court had obtained personal jurisdiction of the defendant.
*1138 This interpretation of jurisdiction, as it relates to the issue presented in Dison, is consistent with the view expressed in a number of decisions issued by this Court and the Court of Appeals. Over a century ago, in City of Selma v. Stewart, 67 Ala. 338, 340 (1880), this Court held that a defendant had waived the right to challenge any defects in an affidavit unless he objected to them in the trial court. See also, Blankenshire v. State, 70 Ala. 10, 11 (1881). In the case of Wells v. State, 245 Ala. 510, 17 So.2d 878 (1944), the defendant's attorney argued that an "[a]ffidavit and warrant of arrest [which are] not on oath ... [are] void...." The affidavit stated that the affiant appeared before a certain person, but the affidavit was sworn to and subscribed by another person. This Court affirmed the defendant's conviction and stated that "[o]bjections to the affidavit are not available when raised for the first time on appeal." 245 Ala. at 511, 17 So.2d at 878.
A similar line of cases has held that, where a defendant has proceeded to trial in an inferior court without demanding a written complaint of the accusation against him, then that defect in the proceedings is deemed to have been waived. In the case of Aderhold v. City of Anniston, 99 Ala. 521, 12 So. 472 (1892), the defendant was arrested without any affidavit being made or an arrest warrant being issued. In the recorder's court (the inferior trial court), the defendant pleaded not guilty, was tried, and was convicted. On appeal to the city court, the defendant argued for the first time that because the prosecution was begun without an affidavit or warrant he could not be tried for the offense. This Court held that, "not having raised those objections in the Recorder's Court, but having there voluntarily appeared to answer the charge, and having pleaded and gone to trial, the defendant waived them...." 99 Ala. at 523, 12 So. at 472. Accord, City of Birmingham v. O'Hearn, 149 Ala. 307, 309-10, 42 So. 836, 836-37 (1906); Brooks v. City of Birmingham, 31 Ala.App. 579, 581-82, 20 So.2d 115, 116-17 (1944).
This is also one of the rationales underlying the decisions of this Court in Ex parte Hood, 404 So.2d 717 (Ala.1981), and Ex parte Holden, 407 So.2d 182 (Ala.1981). One of the cases cited in, and relied on by, Hood was the case of Chaney v. City of Birmingham, 246 Ala. 147, 21 So.2d 263 (1944). In Chaney, this Court was requested to answer two questions certified to it by the Court of Appeals. One of the questions was on the subject of what was required to invoke the jurisdiction of the next higher court on an appeal from an inferior court. In responding to that question, the Court stated the following:
"[T]hat an accused was arrested and tried in such court without a written complaint (affidavit) does not render the judgment there entered void for want of jurisdiction. [Citations omitted.] This for the reason that he may waive the right. [Citation omitted.]
"If the defendant proceed to trial in such court without demanding such complaint he is held to have waived the right and, later on appeal, he cannot for the first time avail of it. [Citations omitted.]
"In order to abate the proceedings in the appellate court because of the lack of an affidavit before the recorder the transcript must affirmatively show that objection to trial without one was seasonably interposed when accused was arraigned and tried in the recorder's court."
246 Ala. at 151, 21 So.2d at 267-68.
See also, McKinstry v. City of Tuscaloosa, 172 Ala. 344, 347, 54 So. 629, 630 (1910) (this Court held that a defendant is deemed to have waived his right to a written complaint setting forth the accusation against him if he does not demand such a complaint before the trial). Accord, Williams v. City of Birmingham, 41 Ala.App. 208, 211, 133 So.2d 713, 716-17 (1961).
There are several other opinions issued by the Court of Appeals worth mentioning that support the proposition that the lack of verification of the ticket does not affect a trial court's obtaining jurisdiction of the subject matter. The opinion of the Court *1139 of Appeals in the case of Bolling v. State, 21 Ala.App. 244, 245, 107 So. 40 (1925), contained the following statement with respect to the question of the trial court's jurisdiction:
"[T]here being no challenge of the affidavit, but a specific agreement by defendant to go to trial thereon, and the circuit court having the original jurisdiction over the crime charged, the defendant is precluded from raising the question of jurisdiction for the first time in this court."
In Fealy v. City of Birmingham, 15 Ala. App. 367, 73 So. 296 (1916), the record on appeal did not contain the affidavit upon which the complaint filed by the solicitor was based. The Court of Appeals held:
"The procedure [for trial] presupposes a valid affidavit in the recorder's court; at least it was the right of the defendant to demand a verified complaint in that forum, and his failure in that behalf has been construed as a waiver, and that the objection came too late upon the trial in the circuit court."
15 Ala.App. at 372, 73 So. at 298.
There are, of course, a number of decisions issued from this Court and the Court of Appeals that were relied on in this Court's opinion in Dison which have held that a void affidavit will prevent the trial court from obtaining jurisdiction to try the case. See, e.g., Slater v. State, 230 Ala. 320, 162 So. 130 (1935); Kyser v. State, 22 Ala.App. 431, 117 So. 157, cert. denied, 217 Ala. 561, 117 So. 159 (1928). Although the decisions rendered in those cases are not readily distinguishable, we believe that the reasoning applied in the cases cited in this opinion is the most appropriate. The cases we have cited stand for the proposition that a defendant can waive his right to have an affidavit free from irregularities and can even waive his right to have any written statement informing him of the accusation against him, if he does not object to those defects at trial. See, e.g., City of Selma v. Stewart, supra; Chaney v. City of Birmingham, supra. Since those defects may be waived by a defendant if he does not object at trial, they must be regarded as pertaining to a trial court's obtaining personal jurisdiction of the defendant. This conclusion is inescapable, since a defendant can not be deemed to have waived an objection that the trial court does not have jurisdiction of the subject matter. See, Berry v. State, 28 Ala.App. 446, 447, 186 So. 781, 782 (1939); Temp. Rule 16.2, A.R.Crim.P. See also, Mobile & Gulf R. Co. v. Crocker, 455 So.2d 829, 831 (Ala.1984).
This Court does not easily reach a decision to overrule a case, especially one that was so recently decided. However, after a consideration of many of the prior cases involving the issue presented in Dison, we find it necessary to overrule the decision rendered in that case. This opinion should not be construed in any manner whatsoever to condone or sanction the prosecution of an individual pursuant to a UTTC that has not been verified. Under Rule 19, Rules of Judicial Administration, the proper procedure is to have the UTTC verified before the proper official. In overruling the Dison opinion, we are simply holding that if the UTTC is not verified and the defendant does not object to this defect before trial, then the objection to the court's personal jurisdiction of the defendant has been waived.
It is beyond question that the issue presented in this case has provoked many thoughts and comments by the members of this Court. It is also an issue that has been thoroughly explored so that a proper resolution to the question may be made. By coming to this resolution of the issue, we necessarily hold that those persons who were convicted of traffic infractions pursuant to an unverified UTTC and who did not object to that defect at the appropriate time, are not entitled to have their convictions vacated or the fines they paid refunded. Accordingly, the judgment of the Court of Criminal Appeals in this case is reversed and the cause remanded.
REVERSED AND REMANDED.
MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
*1140 JONES, ALMON, BEATTY and ADAMS, JJ., dissent in part and concur in the result.
BEATTY, Justice (dissenting from the overruling of Ex parte Dison, but concurring in the result of the opinion insofar as it denies a refund of the fines paid):
After claiming to have undertaken what it describes as "a consideration of many of the prior cases involving the issue presented in Dison," a new[1] majority of this Court today announces its decision to overturn that case. It is a sad day indeed. Not only is the majority's analysis of Alabama case law superficial, but also its reasoning on the matter of jurisdiction in a criminal case is fundamentally flawed, doubtless a result of the unfortunate extent to which conflict and confusion exist in Alabama law. Nevertheless, it is precisely this state of confusion in the law that has prompted my own in-depth analysis of the line of cases on which the majority bases its decision, the constitutional provisions, statutes, and rules of criminal procedure applicable to Dison -type prosecutions, as well as of the long line of cases, both within and without this jurisdiction, that support the view this Court espoused in its opinion in Ex parte Dison, 469 So.2d 662 (Ala.1984). Thorough exploration leads to the unequivocal conclusion that, notwithstanding authority to the contrary, this Court's opinion in Dison was correct. The sincere aim of this dissent is to explain to the people of this state, as thoroughly and as clearly as I can, why the majority's regrettable decision today to retreat from its opinion in Dison works an injustice to potentially every citizen by vitiating something fundamental in the administration of criminal law in this state: the constitutional and statutory limitations on the power of the courts of this state to convict citizens charged with the commission of criminal offenses, except upon the oath of the charging party that he has actual knowledge or probable cause to believe that the accused committed the offense for which he is charged.

I. Constitutional and Statutory Framework for Criminal Prosecutions in Alabama.

Ala. Constitution (1901), art. I, ง 8, as amended by Amendment No. 37 (1939), provides in pertinent part:
"No person shall for any indictable offense be proceeded against criminally by information except ... by leave of the court, for misfeasance, misdemeanor, extortion and oppression in office, otherwise than is provided in the Constitution; provided, that in cases of misdemeanor, the legislature may by law dispense with a grand jury and authorize such prosecutions and proceedings before justices of the peace or such other inferior courts as may be by law established. Provided further that in all felony cases, except those punishable by capital punishment, the legislature may by law dispense with a grand jury and authorize such prosecutions and proceedings in such manner as may be provided by law if the defendant, after having had the advice of counsel of his choice or in the event he is unable to employ counsel, the advice of counsel which must be appointed by the court, makes known in open court to a judge of a court having jurisdiction of the offense that he desires to plead guilty, provided, however, the defendant cannot plead guilty within fifteen days after his arrest." (Emphasis added.)
In Kennedy v. State, 39 Ala.App. 676, 107 So.2d 913 (1958), the Court of Appeals, following the reasoning in the landmark case of Battista v. Christian, 249 N.Y. 314, 164 N.E. Ill, 61 A.L.R. 793 (1928), held that the defendant in a felony case cannot waive the absence of an indictment *1141 except under the express terms of the amendment. The Court of Appeals in Kennedy explained:
"According to the opinion in People ex rel. Battista v. Christian, 249 N.Y. 314, 164 N.E. Ill, 61 A.L.R. 793, the constitutional requisition of indictments generally in all cases of felony is not one conferring a mere personal privilege upon an accused person, but is so imbued with the public concern for due and proper administration of the law that no individual may waive it. [Emphasis added.]
"In De Golyer v. Commonwealth, 314 Mass. 626, 51 N.E.2d 251, it was pointed out that the Massachusetts bill of rights has consistently denied the power of the Legislature to permit trial which could lead to imprisonment in the State prison save there be an indictment. The court went on to approve there a statute (somewhat like our งง 260-266 [Tit. 15, Code 1940], supra) which permitted the written waiver of an indictment with consequent prompt arraignment. The opinion points out that the Christian case, as to nonwaiver, does not apply in all states, citing also Edwards v. State, 45 N.J.L. 419.
"However, a reference to the annotation on the right to waive the lack of an indictment at 61 A.L.R. 798-802, shows a majority of the cases there, including Kyser v. State, [22 Ala.App. 431, 117 So. 157 (1928)], are in accord with the Christian case. See also Annotation, 56 A.L. R.2d 837. For the Kentucky Court of Appeals, the opinion of able Commissioner Clay in Singleton v. Commonwealth, 306 Ky. 454, 208 S.W.2d 325, is a reaffirmation of the nonwaiver doctrine where jurisdiction would be conferred only by indictment.
"[The court in Singleton, supra, stated: `Our statutes do not give the Circuit Court jurisdiction to try the offense committed by Whitaker on a warrant of arrest. The only authority of the court to proceed is based on an indictment. This is an essential element of the subject matter. Such jurisdictional requirement cannot be waived by the defendant. It is our conclusion that the conviction of Whitaker was void....' 208 S.W.2d at 317.]
"It is well to remember the wording of our own Constitution on this point:
"`No person shall for any indictable offense be proceeded against criminally by information, except * * *' Amend. 37. [Emphasis added in Kennedy.]
"...
"Historically, in Alabama the Christian case deserves more than the usual deference and weight which is due an opinion from a respected sister court of the Anglo-American common law tradition. In the Attorney General's opinion (Vol. 14, p. 150), supra, that decision was relied upon along with the Kyser case as authority for requiring a revision of ง 8 of the Constitution. The opinion was addressed to the Hon. W. G. Hardwick, then a member of the House Judiciary Committee. Thus, its persuasive force has etiological as well as rational foundations." (Footnotes omitted.)
39 Ala.App. at 690-91, 107 So.2d at 926-27. Furthermore, a defective indictment cannot be amended, even as to an immaterial matter, without the consent of the defendant. Code of 1975, ง 15-8-90; White v. State, 448 So.2d 421 (Ala.Crim.App.1983). Additionally, if a defendant desires to plead guilty pursuant to Amendment 37, the court
"shall direct the district attorney of such court to prefer and file an information against such defendant, under the oath of such district attorney or some witness, which information shall accuse the defendant, with the same certainty as an indictment, of the criminal offense for which he is being held." (Emphasis added.) Code of 1975, ง 15-15-21.
The defendant in the present case, Betty Ruth Holloway, and the defendant in Dison, Elmore N. Dison, were convicted of driving under the influence in violation of Code of 1975, ง 32-5A-191, which is a misdemeanor *1142 offense under ง 32-5A-3. In Alabama, "all misdemeanors originally prosecuted in the district or circuit court are indictable offenses." Code of 1975, ง 15-8-2. However, pursuant to the authority granted it by the people of Alabama through Amendment 37, supra, the legislature has, through a variety of statutes, dispensed with grand juries in misdemeanor cases and authorized such prosecutions to be by information, complaint, or uniform traffic ticket and complaint (UTTC) before a district court. See Ala. Const. (1901), Art. VI, as amended by Amendment No. 328, 6.05 (1973); Code of 1975, ง 12-12-32, -50, -51, -53; Temp. Rule 15.1(b) and (c), A.R.Crim.P.
Of course, particularly at issue in Dison, as well in the present case is the UTTC. Section 12-12-53(b), supra, provides that the UTTC "shall be used in traffic cases where a complaint is made by a law enforcement officer or by any other person or an information is filed by the district attorney." (Emphasis added.) In defining "information" and "complaint," Temp. Rule 15.1(b) and (c), A.R.Crim.P., provide that both are written statements made upon oath:
"(b) Information. An information is a written statement charging the defendant or defendants named therein with the commission of an indictable offense, made on oath, signed, and presented to the court by the district attorney without action by the grand jury.
(c) Complaint. A complaint is a written statement made upon oath before a judge or other official authorized by law to issue warrants of arrest, setting forth essential facts constituting an offense and alleging that the defendant committed the offense." (Emphasis added.)
And, in fact, the UTTC form contains a space for verification. See also Alabama Rules of Judicial Administration, Rule 19(A)(1) and (2), which provide:
"(1) Traffic Complaint and Summons. The complaint and summons used in all traffic cases shall be the `Uniform Traffic Ticket and Complaint.'
"(2) Use of Ticket. The uniform traffic ticket and complaint shall be used in all traffic cases in all courts of the state. Any ticket properly issued by a law enforcement officer shall be accepted for filing and disposition in any court having jurisdiction over the alleged offense." (Emphasis added.)
As discussed above, in Alabama (as well as in other jurisdictions), the presence of a proper grand jury indictment, and other procedural safeguards attendant thereto, have been held to be non-waivable jurisdictional prerequisites in felony prosecutions; in Alabama this is because of constitutional Amendment No. 37. The question then becomes whether, by virtue of the fact that the people of Alabama have specifically empowered the legislature (through Amendment 37) to provide for other procedural prerequisites to the institution of misdemeanor prosecutions, these procedural prerequisites (informations and complaints made under oath) as outlined above, should be deemed to be any less prerequisite constitutionally and jurisdictionally than grand jury indictments in felony cases. The answer is a definite and resounding NO. In Gunn v. City of Birmingham, 402 So.2d 1122 (Ala.Crim.App.1981), the defendant was charged by five separate complaints with violation of ง 28-2 of the General Code of the City of Birmingham. Over defendant's objection, she was put to trial on these multiple complaints. The Court of Criminal Appeals reversed, noting the substantive and procedural similarities between complaints (or informations) and indictments:
"A defendant in this state may not be put to trial on multiple indictments without his express agreement and consent, unless he fails to object. Hopkins v. State, 54 Ala.App. 75, 304 So.2d 629 (1974). The complaints by which appellant was brought to trial in the instant case were in the nature of indictments, differing only in that they were presented by a public officer (a City Attorney) upon his oath of office, rather than by *1143 a grand jury on their oath. See Code of Alabama 1975 ง 15-7-1, ง 15-8-1. The term complaint, used in this sense, is synonymous with the term information, and is an economical, convenient, and speedy aid to the administration of justice which omits the necessity of a grand jury indictment. Ex parte State, 71 Ala. 371 (1882); see Black's Law Dictionary, 4th Edition Revised, 1968, Complaint, Information defined. The Constitution of Alabama of 1901 Art. I ง 8, (amendment # 37), makes specific provisions for the omission of grand jury indictments in the prosecution and proceedings in certain well defined situations. Accordingly, Alabama cases have treated complaints of this nature much the same as if they were indictments and have applied the substantive laws of each interchangeably. See, Mitchell v. State, 41 Ala.App. 254, 130 So.2d 198, cert. denied, 272 Ala. 707, 130 So.2d 205 (1961); Anderton v. State, Ala.Cr.App., 390 So.2d 1083, cert. denied, 390 So.2d 1087 (Ala.1980); Hembree v. City of Birmingham, Ala.Cr. App., 381 So.2d 664 (1980).
"We are of the opinion that the rule of law applied to consolidation of multiple indictments over a defendant's objection is applicable to the multiple complaints in the instant case.
"... We are constrained to hold that the appellant was entitled to a separate trial on each complaint, such being necessitated by the form and substance of the complaints brought before the trial court. These complaints are to be distinguished from one indictment charging multiple misdemeanors. Boatner v. State, 8 Ala.App. 361, 63 So. 33 (1913). The rights of the defendant, who upon conviction may be sentenced to fines or hard labor, cannot be sacrificed merely to promote a more rapid and economic dispensation of trial court dockets. Ex parte Beard, 246 Ala. 338, 20 So.2d 721 (1945)." (Emphasis added.) 402 So.2d at 1123-24.
Nevertheless, the majority opinion does not purport to dispense with the requirement that the UTTC be made out under the oath of the charging officer. The majority simply concludes that this defect (the absence of verification) was merely a defect in the court's jurisdiction of the person, which was waived by the defendant's failure to object to the unverified complaint in the district court.

II. Verified ComplaintโSubject Matter or Personal Jurisdiction?

The majority relies in large part on the statement of the two types of jurisdiction set out in the case of Woolf v. McGaugh, 175 Ala. 299, 57 So. 754 (1911).[2] See the majority opinion, at 1137. It is important to note that Woolf is a civil case,[3] and, therefore, that the jurisdictional analysis in that case fails to touch upon the subtle, yet strict, element of subject matter jurisdiction present in criminal cases; namely, that a court, having a general subject matter jurisdiction over the class of crimes within which the defendant is charged and the defendant's voluntary appearance, must, nevertheless, have its power to adjudge a particular offense properly invoked by the State's filing the accusation in lawful form. An excellent explanation of this principle is set out with particularity in the case of Pease v. State, 74 Ind.App. 572, 129 N.E. 337 (1921):
"The word `jurisdiction' is sometimes used in a general sense, and sometimes in a particular sense. In the general sense it signifies the abstract right of a tribunal to exercise its power in causes of a certain class. In the particular sense it relates to the right of a tribunal to exercise its power with respect to a particular matter. The former is conferred by the Constitution or statutes, *1144 but the latter is conferred by instituting an action in a lawful and proper manner. For a concrete illustration: A. holds a promissory note in the sum of $100 against B. and secured by mortgage on B.'s real estate; a controversy concerning payment arises between the parties, and A. concludes to call upon the state to aid him in enforcing his claim against B. by foreclosure proceedings. To what court shall A. go for relief? By consulting the statutes he may learn that a justice of the peace is empowered to hear and determine an action on a promissory note of that amount and to render a personal judgment, but has not been empowered to foreclose a mortgage. From the same source he may learn, also, that the circuit court has been empowered to hear and determine the whole matter and to grant all the relief to which A. may be entitled. In other words, the circuit court has been designated by law as a proper court in which to bring causes of the class to which A.'s cause of action belongs, and has been authorized by law to hear and determine causes of that class. Hence it is commonly said in an abstract sense that the circuit court has general jurisdiction of the subject. In other words, the subject is within the scope of that court's authority. But it has no jurisdiction of the particular controversy between A. and B., and has no right to exercise jurisdiction of that particular subject-matter until an action has been commenced and perfected in a lawful and proper manner. Under our Code an action is commenced when a complaint has been filed and summons issued. By filing his complaint and taking out a summons A. submits himself and his cause of action to the court; and service on B., or his voluntary appearance, perfects the action and gives the court complete jurisdiction of the particular subject-matter involved. [Citations omitted.]
"The same principle holds good, of course, in criminal law. In this branch of the law, however, the principle is applied with greater strictness. To illustrate: if the prosecuting attorney for Marion County should be of the opinion that C. has committed the crime of burglary, and has determined to prosecute him for that offense, he may readily learn by consulting the statutes that the criminal court has general jurisdiction to try and determine causes of the class to which a prosecution for burglary belongs. However, the criminal court can have no jurisdiction, and cannot enter upon a trial, of the particular controversy between the state and C. until an action has been commenced and perfected in a lawful and proper manner.

"In this state it has been held consistently that a criminal action can be commenced only in the manner provided by law, and that it is the filing of the accusation in lawful form that invokes the jurisdiction of the court in the particular cause. [Citations omitted.]
"It is a universal principle as old as the law that the proceedings of a court without jurisdiction are a nullity and its judgment void. Springer v. Shavender, 118 N.C. 33, 23 S.E. 976, 54 Am.St.Rep. 708. There can be no conviction or punishment for crime, except on accusation made in the manner prescribed by law.

"The Legislature has provided that all public offenses, except treason and murder, may be prosecuted in the circuit or criminal court, by affidavit filed in term time, that the first pleading on the part of the state is either an indictment or affidavit, and that the affidavit shall have the approval of the Prosecuting Attorney indorsed thereon. Sections 1989, 2039, Burns' Ann.St. 1914. It is essential that there be a strict compliance with the legislative requirements concerning the commencement of a criminal action, for the power of the Legislature to prescribe the requirements is plenary. [Citations omitted.]
"In the case at bar the defendant participated in the proceedings and seems to have made no objection on the ground that the court was without jurisdiction *1145 until after the pretended judgment. But his conduct in that respect did not estop him from afterward raising the question of jurisdiction. Even his unqualified consent could not confer jurisdiction; for the question of jurisdiction was a matter between the Legislature and the court, and not between the parties.

"The jurisdiction of the courts is in reality a power inherent in the state, and is conferred on the courts either directly by the people through their Constitution, or indirectly through the Legislature by laws duly enacted. [Citations omitted.] The legislature, having in mind the liberties of the people, has declared that no citizen shall be put on trial for a public offense except on indictment or affidavit. Manifestly the legislative purpose is to shield and protect the individual from the disgrace, expense, and hazard involved in a criminal prosecution in so far as that may be done consistently with the public welfare. The Legislature has determined that the public welfare is best promoted by saving the individual from the criminal prosecution unless the accusation rests on sworn testimony given to the grand jury or on a sworn statement in the form of an affidavit." (Emphasis added.)
74 Ind.App. at 574-77, 129 N.E. at 338-39. Similarly, in Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), the United States Supreme Court granted the defendant's petition for writ of habeas corpus for the reason that the defendant was convicted upon an indictment which had been amended, without his consent, by the trial court upon the motion of the United States attorney. Construing the Fifth Amendment to the United States Constitution, after which our Amendment 37, supra, is modeled, providing that "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury," the Court held:
"We are thus not left to the requirements of the common law in regard to the necessity of a grand jury or a trial jury, but there is the positive and restrictive language of the great fundamental instrument by which the national government is organized, that `no person shall be held to answer' for such a crime, `unless on a presentment or indictment of a grand jury.' But even at common law it is beyond question that in the English courts indictments could not be amended....
"The learned judge who presided in the circuit court at the time the change was made in this indictment, says that the court allowed the words, `comptroller of the currency and,' to be stricken out as surplusage, and required the defendant to plead to the indictment as it then read. The opinion ... rests the validity of the court's action in permitting the change in the indictment upon the ground that the words stricken out were surplusage, and were not at all material to it, and that no injury was done to the prisoner by allowing such change to be made. He goes on to argue that the grand jury would have found the indictment without this language. But it is not for the court to say whether they would or not.... [H]ow can it be said that, with these words stricken out, it is the indictment which was found by the grand jury? If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says `no person shall be held to answer,' may be frittered away until its value is almost destroyed.
"... We are of the opinion that an indictment found by a grand jury was indispensable to the power of the court to try the petitioner for the crime with which he was charged....

*1146 "It only remains to consider whether this change in the indictment deprived the court of the power of proceeding to try the petitioner and sentence him to the imprisonment provided for in the statute. We have no difficulty in holding that the indictment on which he was tried was no indictment of a grand jury. The decisions which we have already referred to, as well as sound principle, require us to hold that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provisions, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists. It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime, for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the constitution, can be `held to answer,' he is then entitled to be discharged so far as the offense originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a nolle prosequi had been entered." (Emphasis added.)
121 U.S. at 6, 9-10, 12-14, 7 S.Ct. at 784-788.
Identical principles have been embraced in this jurisdiction with respect to indictments. See discussion, supra. And, although the majority dismisses them as founded upon inappropriate reasoning, for over 100 years the courts of this state have repeatedly applied these principles, sometimes expressly, sometimes implicitly, to cases involving fatally defective and insufficient complaints and informations in state prosecutions. An accusation made in the manner prescribed by law (constitutional or statutory) is a prerequisite to the court's power to exercise its jurisdiction over a criminal offense. This is true even though "the court still has jurisdiction of the person and of the crime." Ex parte Bain, supra. Compare Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927), where the United States Supreme Court, construing waivability of an improperly verified warrant of arrest under the Fourth Amendment to the United States Constitution, held:
"The invalidity of the warrant [of arrest] is not comparable to the invalidity of an indictment. A person may not be punished for a crime without a formal and sufficient accusation even if he voluntarily submits to the jurisdiction of the court. Compare Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. But a false arrest does not necessarily deprive the court of jurisdiction of the proceeding in which it was made. Where there was an appropriate accusation either by indictment or information, a court may acquire jurisdiction over the person of the defendant by his voluntary appearance. That a defendant may be brought before the court by a summons, without an arrest, is shown by the practice in prosecutions against corporations which are necessarily commenced by a summons. Here, the court had jurisdiction of the subject-matter; and the persons named as defendants were within its territorial jurisdiction. The judgment assailed would clearly have been good, if the objection had not been taken until after the verdict. This shows that the irregularity in the warrant was of such a *1147 character that it could be waived...." (Footnotes omitted.) (Emphasis added.)
273 U.S. at 8-9, 47 S.Ct. at 252-253.[4]
In Ethridge v. State, 76 Tex.Crim.R. 41, 172 S.W. 784 (1915), the defendant was tried for a misdemeanor offense only upon a complaint. No information was filed. The Constitution of Texas (art. 5, ง 17) allowed for this, providing that "prosecutions may be commenced ... by information..., or by affidavit as may be provided by law." A Texas statute, however, provided:
"If the offense be a misdemeanor, the attorney shall forthwith prepare an information, and file the same, together with the complaint, in the court having jurisdiction of the offense."
Noting that, under such circumstances, an information is just as much a jurisdictional prerequisite in misdemeanor cases as an indictment is in felony cases, the Texas Court of Criminal Appeals held:
"The Legislature is vested with authority, doubtless, to prescribe that the case may be tried, in misdemeanors, in the county court without filing an information under the language of articles 5, 6, and 17 of the Constitution, or it may require that the information be filed. This has not only not been done, but the opposite is required. The Legislature has provided that the information shall be filed, based upon a complaint or affidavit. This would settle the question beyond dispute. Construing the Constitution and the statutes, the courts have invariably held that the county court cannot acquire jurisdiction or try a misdemeanor where it originated in the county court, until an information has been filed. [Citations omitted.] This court will reverse a conviction from the county court where an information was not filed in that court, provided the case originated in the county court, whether there was a motion made in the trial court or not. It is a jurisdictional question. An information is as prerequisite, under such circumstances, in the county court, as is the indictment in a felony prosecution in the district court. To hold that a party could waive an information in the county court would be equivalent to holding substantially that the party could waive an indictment in a felony prosecution. The invalidity of a prosecution originating in the county court without an information has been decided so often, and has become so thoroughly the settled law, it is deemed unnecessary to discuss the matter or cite further authorities." (Emphasis added.)
75 Tex.Crim.R. at 42, 172 S.W. at 785. Accord Davis v. State, 150 Tex.Crim.R. 463, 202 S.W.2d 943 (1947). See also Harris v. State, 46 Del. Ill, 82 A.2d 387 (1951).[5]
*1148 In State v. Coleman, 186 Mo. 151, 84 S.W. 978 (1905), the Missouri Supreme Court noted that the state constitution had been amended so as to allow prosecutions for murder by information instead of by indictment. The court, nevertheless, held that an information for a crime, which is prosecuted at common law only by an indictment found upon the oath of the grand jurors, should conclude upon the oath of the prosecuting attorney, and that the information is invalid if it is not so sworn. Therefore, the court concluded, the information being invalid, the question of its validity may be properly raised for the first time in the supreme court. See also State v. Chacon, 62 N.M. 291, 309 P.2d 230 (1957), where the court held that a criminal complaint subscribed to only by the county sheriff was insufficient to give the court jurisdiction to accept defendant's guilty plea; constitutional provisions requiring grand jury indictment or information by district attorney in felony cases were deemed mandatory and nonwaivable.
Particularly on point is a line of New York cases beginning with People ex rel. Livingston v. Wyatt, 186 N.Y. 383, 79 N.E. 330 (1906). In that case, the New York Court of Appeals held that, based on the definition of "criminal complaint" contained in the Code of Criminal Procedure (viz., "the allegation made to a magistrate, that a person has been guilty of some designated crime"), a criminal complaint must be made in writing upon an oath. The court explained:
"The statute does not expressly provide that it is to be sworn to, nor even that it must be in writing, although the word `allegation' from the analogy of other judicial proceedings points to that formality....
"From all the analogies of the law, both civil and criminal, the information is intended to be made upon oath. While the statute does not expressly require it, we think it is necessarily implied, for otherwise an unfounded accusation could be set on foot and an investigation instituted upon unsupported assertion without any proof whatever.... Neither the great lawyers who drafted the Code of Criminal Procedure nor the Legislature which enacted it into law intended that a criminal investigation should be made by a magistrate without evidence given under the sanction of an oath and subject to the penalty for perjury if wilfully false.

"... The information should fairly warrant the inference by the magistrate that in good faith and on reasonable grounds the complainant believes that a definite crime has been committed by a designated person. There is then a proper foundation upon which to issue subpoenas and take depositions, whereas without it the inquiry is prosecuted on the mere chance that some crime may be discovered.... The highest care of the law is personal liberty, and, construing the statute in the light of that principle, we think that the respondent was without jurisdiction to entertain the proceeding or to require the attendance of witnesses, because sufficient proof was not laid before him.

"... We are of the opinion that the subpoena issued by the magistrate was void upon its face, and that it called for *1149 obedience to its commands on the part of no one." (Emphasis added.)
186 N.Y. at 390-93, 79 N.E. at 332-34. Accord People v. Tompkins, 202 Misc. 147, 114 N.Y.S.2d 297 (1952) (requirement of written information not waived by a plea of guilty). Four other New York decisions are squarely on point. They are People v. Scott, 3 N.Y.2d 148, 164 N.Y.S.2d 707 (1957); People v. Semonite, 18 Misc.2d 427, 189 N.Y.S.2d 256 (1959); People v. Ragusa, 44 Misc.2d 940, 255 N.Y.S.2d 269 (1964); and People v. Dros, 11 N.Y.2d 167, 227 N.Y.S.2d 431 (1962).
In People v. Scott, supra, the defendant was stopped by a police officer and issued a "uniform traffic ticket" charging the defendant with driving while intoxicated. The defendant pleaded guilty and was sentenced to a $25 fine or 25 days in jail. The defendant paid the fine and was granted permission to appeal. On appeal, the New York Court of Appeals concluded that "[f]rom the form of the ticket or summons prescribed by the Bureau of Motor Vehicles, pursuant to the authority granted in section 74 of the Vehicle and Traffic Law, it is clear that it is not intended to fulfill the function of an information." The court went on to hold at 3 N.Y.2d at 151-53, 164 N.Y.S.2d at 709-12, as follows:
"Provision for the new form of uniform traffic ticket did not change the previously existing law that the summons was not the process which instituted a criminal proceeding; indeed, in section 74-b of the Vehicle and Traffic Law, the necessity for a verified complaint in a criminal proceeding in addition to the summons was recognized, and the aforesaid regulations (Uniform Traffic Ticket Regulations; N.Y.Off.Comp. of Codes, Rules & Regulations, 10th Off.Supp., 1955, p. 734) provide that `no uniform complaint is prescribed at this time.' No complaint or information was here placed before the court.
"In this case, where defendant is charged with the commission of a misdemeanor and not a minor offense (People v. Grogan, 260 N.Y. 138, 141, 183 N.E. 273, 274, 86 A.L.R. 1266), it is not disputed that a written information is required, and the law in this respect appears to be well settled. [Citations omitted.]
"An additional objection to the use of the traffic ticket as an information is that it is not verified. It has been frequently held not only that an information is necessary but, that where it is used as the basis for obtaining a warrant of arrest, it must be verified. [Citations omitted.] In our opinion, the same reasons of policy which we stated in People ex rel. Livingston v. Wyatt, 186 N.Y. 383, 79 N.E. 330, 10 L.R.A., N.S., 159, supra, require verification of an information when used as a basis for obtaining a warrant of arrest, require verification of an information when used as a pleading.

"The rule in the Federal courts is not to the contrary, for there the informations are filed by the United States Attorneys under their oaths of office, and are thus not required to be verified. [Citations omitted.]
"We turn now to the question of whether defendant has waived his objection to the lack of an information by his plea of guilty. It is well settled that by such a plea he waives his objection to the form of the information, or where it is based on information and belief without disclosing the source thereof. [Citations omitted.]
"However, objections to the jurisdiction of the court are not waived, nor is the objection that the information does not state a crime. [Citations omitted.]
"In the present case, therefore the question is whether the absence of a verified information is a formal or a jurisdictional defect. Some earlier lower court decisions have held that it is a formal defect, which is waived by a plea of guilty (City of Buffalo v. Murphy, 228 App.Div. 279, 286, 239 N.Y.S. 206, 215; City of Buffalo v. Neubeck, 209 App.Div. 386, 391, 204 N.Y.S. 737, 740, supra; People v. Carter, 88 Hun. 304, 306, 34 N.Y.S. 764, 765; People v. Park, *1150 92 Misc. 369, 374, 156 N.Y.S. 816, 819; People v. Burns, 19 Misc. 680, 44 N.Y.S. 1106), but authority may be found to the contrary (as, e.g., People v. James, 11 App.Div. 609, 612, 43 N.Y.S. 315, 317; see People v. Bell, supra, 31 N.Y.Cr.R. at page 376, 148 N.Y.S. at page 756). It should be noted that City of Buffalo v. Murphy, supra, involved the violation of a city ordinance not amounting to a misdemeanor and remaining cited cases were decided prior to Albrecht v. United States, 273 U.S. 1, at page 8, 47 S.Ct. 250, at page 252, 71 L.Ed. 505, supra, in which case the Supreme Court stated: `A person may not be punished for a crime without a formal and sufficient accusation even if he voluntarily submits to the jurisdiction of the court.' Indeed, since our decision in People v. Jacoby, supra, lower courts have taken the position that the requirement of a written information was not waived by a plea of guilty (People v. Tompkins, 202 Misc. 147, 148-149, 114 N.Y.S.2d 297, 198, supra; People v. Halling, 203 Misc. 428, 122 N.Y.S.2d 543, supra; People v. Mavis, 5 Misc.2d 943, 154 N.Y.S.2d 220).
"The view of these later cases appears by far to be the sounder one. If in a case involving a misdemeanor a mere unverified summons is to be the equivalent of an information, then any verified paper could be treated likewise. This would be a dangerous practice for there are countless misdemeanors for which a defendant may be punished by imprisonment for a year plus a fine of $500 (Penal Law, Consol. Laws, c. 40, ง 1937), not to speak of additional penalties, such as loss or suspension of a license to drive an automobile, to practice one's profession or to engage in a licensed business.
"The requirement that a prosecution for misdemeanor be based upon a sworn information (unless, of course, made by a District Attorney) is an essential guarantee to a defendant of a fundamental right, namely; that he be not punished for a crime without a formal and sufficient accusation, and this right may not be waived by a plea of guilty (Albrecht v. United States, 273 U.S. 1, 8, 47 S.Ct. 250, supra; Weeks v. United States, 2 Cir., 216 F. 292, 293, supra; People ex rel. Battista v. Christian, 249 N.Y. 314, 318, 164 N.E. Ill, 61 A.L.R. 793). `Forms and procedure still have their place and purpose in the administration of the law; without them we would have chaos' (People v. Zambounis, 251 N.Y. 94, 97, 167 N.E. 183, 184)." (Emphasis added.)
In People v. Semonite, supra, the defendant was convicted of speeding. The case is similar to Dison in that the information charging the defendant was signed but not verified. However, at a later time, the justice of the peace verified the signature. The court held this to be an inadequate oath, stating:
"Judicial construction has decreed that such an information must be made under oath [citations omitted]. The same requirements in regard to an oath should be observed in regard to an information charging a traffic infraction [citations omitted]. As to an oath, whatever the form adopted, it must be in the presence of an officer authorized to administer it and it must be an unequivocal and present act by which the affiant consciously takes upon himself the obligation of an oath." 18 Misc.2d at 427-28, 189 N.Y.S.2d at 257-58.
The court concluded that, there being no valid oath, the information must therefore fall and ordered the conviction reversed, the information dismissed, and the fine remitted. To the same effect is the case of People v. Ragusa, supra, where the police officer did not verify the information prior to arraignment and trial, but rather, during the trial, the trial court elicited testimony from the officer-witness whereby he swore to the facts alleged by the information charging the defendant with speeding. The court in Ragusa held the information to be jurisdictionally defective, thereby depriving the trial court of jurisdiction to try the case.
*1151 The fourth New York case apropos to Dison and the present case is People v. Dros, supra. In Dros, the defendant, who had been convicted of violations of the multiple dwelling law, petitioned for a writ of habeas corpus, claiming that the information charging him was unsworn. The court noted that, for purposes of expediting disposition, such violations had been recently downgraded by the legislature from misdemeanor offenses to just offenses. However, the court further noted that, under the multiple dwelling law, violations must be treated procedurally as misdemeanors. Citing the other New York cases discussed herein, the court stated that "[w]here a defendant has been convicted of a misdemeanor, rather than an offense of less than the grade of misdemeanor it can no longer be doubted that an unsworn information is jurisdictionally defective," 11 N.Y.2d at 170, 227 N.Y.S.2d at 432, and the court held that the writ should be granted. In so holding, the court remarked, "[I]ndeed, the more expeditious the process, the greater may be the need to insure that a defendant's rights will not be brusquely violated." Id., 11 N.Y.2d at 172, 227 N.Y.S.2d at 434.
Clearly, the requirement that a prosecution for a misdemeanor be based upon a sworn complaint or information is an essential guarantee to a defendant of a fundamental right, namely, that he not be punished for a crime without a formal and sufficient accusation, and this right may not be waived by the failure to object or by a plea of guilty. Nevertheless, as suggested in People v. Dros, supra, perhaps there is some basis for relaxing these requirements in prosecutions for offenses below the grade of misdemeanor. At least, the courts in Alabama have so held, which leads me into an analysis of Alabama law.

III. Alabama Law.

In its opinion, the majority cites 12 cases that stand for the proposition that a defendant is deemed to have waived his right to a formal and sufficient written complaint by failing to demand one or by failing to object to its defects before trial in the court having original jurisdiction. Curiously enough, eight of these cases involved prosecutions by cities for violations of municipal ordinances, which, according to some of the cases cited in the majority opinion, are treated as civil in nature and are termed quasi-criminal. Although I do not agree with this line of authority, the Alabama courts have held over the years that, in such instances, the rules are a bit different.
Because of Justice Mayfield's vehement, yet eloquent, dissent in McKinstry v. City of Tuscaloosa, 172 Ala. 344, 54 So. 629 (1910), I will begin there. In that case, Justice McClellan, writing cryptically for a majority of the court, stated the following:
"That the prescribed method of procedure on appeals from convictions for violations of municipal ordinances is that pursued in the trial of criminal cases appealed from the judgments of justices of the peace (Code [1907], ง 1451) does not change the character of the proceeding itself from quasi criminal to criminal. The effect of the statute is to assimilate to the trial of offenders against municipal ordinances the procedure in criminal appeals from justice's courts. Section 64 (Code, ง 1218) consists with the indicated assimilated mode of procedure on appeals. Sections 67 and 68 treat of the recorder's jurisdiction, of the bar of further prosecution for the unlawful act of which a conviction is had, and of the fines and punishments to be imposed. It is not written in them, nor are the provisions thereof susceptible of affording an inference, that such prosecutions are criminal, and not quasi criminal only. The nature and character of a prosecution for a municipal offense is now, as it has always been in this state, a quasi criminal proceeding only. Hence constitutional and statutory provisions, otherwise than the before-stated assimilation in matters of procedure, has been effected, having reference to criminal prosecutions by the state, are not applicable to the violation of municipal ordinances. It therefore follows that the court below did not err in respect of its rulings on the pleadings *1152 wherein questions of jurisdiction were involved. The failure of the defendant to demand in the municipal court a complaint stating the accusation against him precluded him from asserting its absence on appeal." (Emphasis added.) 172 Ala. 349-350, 54 So. at 630-31.
See also Sherrod v. State, supra, where the Court noted:
"If the offense be one denounced by ordinance of the municipality, the formal accusation cannot be said to have been waived until the accused pleads to the charge without demanding the nature and cause of the accusation against him.โ Aderhold v. Mayor, etc., of Anniston, 99 Ala. 521, 12 South. 472."
See also Howard v. City of Bessemer, 40 Ala.App. 317, 320, 114 So.2d 158, 161 (1959), where the court noted:
"Prosecutions for violations of municipal ordinances are deemed quasi-criminal under the established doctrines of our cases. For this reason the rules relative to the necessity of written complaints in prosecutions for State offenses, or in appeals to the circuit court from convictions in a Recorder's Court, where the trial is de novo, are inapplicable...."
Such is the foundation for the decisions upon which the majority relies as its basis for overruling Dison, a case clearly involving a state prosecution for a traffic offense classified a misdemeanor under the laws of this state. Moreover, the particular holding in McKinstry (viz., that by failing to demand one, a defendant may waive the requirement of a written complaint setting forth the nature and character of the charge against him) cannot now be applied in Dison-type cases by virtue of certain provisions of the Temporary Rules of Criminal Procedure. Those provisions are Rule 1(d), making the rules applicable to minor misdemeanors for which a defendant may be imprisoned, and Rule 16.2(d), which provides that objections to subject matter jurisdiction and the failure to state an offense in the charge, may be raised at any time.
In his vigorous dissent, Justice Mayfield pointed out the absurdity of differentiating between municipal prosecutions and state prosecutions, and, citing numerous authorities, he elaborated at length on the impropriety of concluding that an accused could waive the constitutional and statutory jurisdictional requirement of a sufficient and valid affidavit or complaint which conforms to law on which the state must base its power to prosecute. Because Justice Mayfield's dissent encapsulates the principles which I can only hereinafter reiterate, it is set forth in its entirety below:
"I am constrained to believe that the majority opinion is wrong because in my opinion it is grounded on two false premises: The first is that the accused was prosecuted and convicted of the offense of violating a municipal ordinance; and the second that she could and did waive her right to demand the process which the Constitution and statutes require to support a judgment of conviction in criminal cases.
"One of the vexed questions which has perplexed the courts of this country, as well as the text-writers on constitutional, criminal, and municipal laws, is whether a single given act or transaction can be made to constitute two offenses, one against a municipal ordinance or by-law and the other against the general criminal statutes of the state. To state the proposition differently, can the same act or transaction be made two offenses, and be twice punished, once under a valid municipal ordinance, and once under the general criminal statutes of the state? It is said by Mr. Dillon that the cases and authorities on this subject are at variance. Some hold that the same offense may be a double oneโone as against the peace and dignity of the state, and the other against the good order of the municipality. Others regard the act as constituting but one offense, holding it to be punishable but once, and that by the tribunal which first acquires jurisdiction. Mr. Justice Cooley says that the decisions are not uniform on this question, but that the weight of authority is that the same act may constitute both an offense against the state and the one against the municipality, *1153 and that both may be punished without a violation of any constitutional right or principle.โCooley on Const. Lim. 199.
"Alabama is among the states which have held that offenses against the municipality and offenses against the state are distinguishable and disconnected, and that prosecutions for the two classes proceed upon different hypothesesโthe one contemplating the conservation of the peace and the good order of the city, and the other (a more enlarged object) the maintenance of the peace and dignity of the state.โMobile v. Rouse, 8 Ala. 515; Mobile v. Allaire, 14 Ala. 400; Moore v. State, 16 Ala. 411; Greensboro v. Mullins, 13 Ala. 341. So it has been held in this state that one of the proceedings is to be treated as a mere police regulation, for the enforcement of good order and quietude within the limits of the corporation; while the other is one to punish an offense against the criminal laws of the country. As is pointed out by Mr. Dillon and Mr. Cooley and other constitutional and municipal writers, this condition of the law on this subject led to embarrassment, confusion, and consternation, and often resulted in depriving the citizen of his constitutional guaranty of liberty. Our Constitution makers and Legislatures have sought to avoid this, and to this end a proviso has been added to section 8 of the Bill of Rights of 1901, authorizing the Legislature to dispense with grand juries and to provide for prosecution and proceedings, as for all misdemeanors, before justices of the peace or such other inferior courts as may be by law established. This proviso appeared for the first time in the Constitution of 1865, and, in order to give it effect, the Legislature adopted the Penal Code of 1866, which conferred jurisdiction upon justices of the peace for final trial of certain misdemeanors without indictment, and created inferior courts, denominated county courts, and invested them with power and jurisdiction to prosecute all misdemeanors upon affidavit and complaint, thus dispensing with the necessity of a grand jury or indictment in such cases. That Code also provided forms and prescribed rules and regulations for the making of the affidavit or complaint, the basis of prosecutions for misdemeanors in such inferior courts, which was in lieu of the indictment theretofore required by the Constitution. This system of criminal proceedings has been adhered to ever since first inaugurated in 1866 though it has been enlarged by subsequent acts of the Legislature. It has been held that prosecutions thus instituted need not conclude `against the peace and dignity of the State of Alabama,' as is required by the Constitution as to indictments.
"It has never been held by this court, however, that this proviso authorizes depriving the defendant of the right of trial by a petit jury, though it does expressly authorize dispensing with a grand jury as to all misdemeanors. It has been uniformly held by this court that no prosecution or conviction, for any misdemeanor can be supported without an affidavit or complaint substantially conforming to the Constitution and statutes authorizing such prosecutions without indictment in the inferior court. Prosecutions, judgments of conviction, and sentences in these inferior courts, even after appeal to, and judgment in the circuit court, have been pronounced absolutely void, whether on direct appeal or collateral attack, when the affidavit or complaint did not substantially conform to the requirements of the statutes. These cases are too numerous and too well known to require citation, but among them may be mentioned those of Johnson v. State, 82 Ala. 29, 9 South. 466; Miles v. State, 94 Ala. 106, 11 South. 403; Cross v. State, 117 Ala. 73, 23 South. 784; Wiley v. State, 117 Ala. 158, 23 South. 690; Barron v. City of Anniston, 157 Ala. 399, 48 South. 58; City of Selma v. Shivers, 150 Ala. 505, 43 South. 565; Arzumanian v. City of Birmingham, 165 Ala. 374, 51 South. 645. Cited in these will be found many others to the same effect. It will also be noticed from the opinions and decisions in these cases that it is wholly immaterial whether the prosecution be in a justice court, a city court, a county court, a circuit court, or a municipal court. The conviction and sentence cannot be supported unless based *1154 upon an affidavit or complaint which substantially conforms to the requirements of the statutes which authorize the prosecution of misdemeanors without indictment. The statute (now section 6703 of the Code) has uniformly been held applicable and requisite to all prosecutions and convictions for misdemeanor, no matter in what court or courts the prosecution should be instituted or terminated.
"The present Municipal Code, now embraced in the Political Code of the state (sections 1046-1460), has established, in some respects, an entirely new system of prosecution as of misdemeanors which are committed within the territorial limits of a municipality. Under the proviso of section 8 of the Constitution, above referred to, all municipal courts are now given original and concurrent jurisdiction with the county courts or courts of like jurisdiction of all misdemeanors committed within the city or town or within the police jurisdiction thereof.โCode [1907], ง 1222. It also authorizes appeals to the circuit courts or courts of like jurisdiction in all cases for violation of municipal ordinances or for a misdemeanor, and further provides that trial on such appeals shall be had de novo, and be governed in all respects by the laws regulating appeals from judgments of justices of the peace in criminal cases.โCode, งง 1217, 1451. The Municipal Code also provides that, when a person has been tried and convicted in a municipal court of any offense which is a misdemeanor under the state laws, `he shall be punished as provided by law.' This, of course, means the general law of the state.โCode, ง 1221. This Code also provides that judgment of conviction in municipal courts shall be a bar to a prosecution for the same offense, or substantially the same offense, in the state court, and that a judgment in the state court shall be a bar to a prosecution for the same, or substantially the same offense, in the municipal court.โCode, ง 1222.
"It is thus made to appear beyond dispute that the Legislature acting under the proviso of section 8 of the Constitution has created municipal courts and made each and all inferior criminal courts, and clothed them with the power and authority to try all offenses which are misdemeanors under the general criminal laws, as well as to try those which are only offenses against the municipal ordinances or bylaws. It is also made to appear by this Code that it is immaterial whether the prosecution in the municipal court is in the name of the state or in the name of the municipality when the offense charged is a violation of both the general statutes and the municipal ordinances. The Municipal Code requires that punishment in each case, whether imposed for the benefit of the city or for the state, shall be of the same kind and degree. As has been heretofore pointed out, it is not necessary that prosecutions for misdemeanors in these inferior courts shall be in the name of the state, or conclude, `against the peace and dignity of the state.'โThomas v. State, 107 Ala. 61, 17 South. 941; Simpson v. State, 111 Ala. 6, 20 South. 572.
"It thus appears that this vexed question of one act or transaction constituting two offensesโone against the municipality and one against the stateโinvolving two prosecutions, one by the city and one by the state, has been avoided in the Municipal Code by giving the municipal courts concurrent jurisdiction with the state courts, as to the trial of all misdemeanors committed within the territorial limits of the municipality, and by authorizing the prosecution in such cases in the name of either the state or the municipality, and by making prosecutions in either court a bar to a subsequent prosecution in the other. It therefore follows that in all prosecutions in municipal courts for offenses which are misdemeanors the procedure and practice must conform to those constitutional and statutory requirements provided for the prosecution of misdemeanors in all other inferior courts and that a conviction in such municipal courts for offenses which are misdemeanors is absolutely void unless supported by an affidavit or complaint which substantially conforms to the requirements of section 6703 of the Code. If *1155 a defective affidavit or complaint will render a conviction and sentence based thereon absolutely void on collateral attack (see Johnson's Case, 82 Ala. 29, 2 South. 466; Miles' Case, 94 Ala. 106, 11 South. 403; Shivers' Case, 150 Ala. 505, 43 South. 565), then a fortiori the entire absence of any affidavit or complaint or information should render the judgment, conviction, and sentence void.
"Such a case is presented by the record on appeal now before us. The defendant in this case was arrested without affidavit, oath, or warrant, put upon trial, and convicted of a high misdemeanor, without the color of an affidavit, oath, warrant, or complaint. This being true, I cannot conceive how it is possible under the laws of this state for such a judgment, conviction, and sentence to be valid. My Brothers have acted and decided on the false premises that the defendant was not charged or convicted of a misdemeanor under the general criminal statutes of the state, but that she was tried and convicted only of the violation of a municipal ordinance. If this latter condition were true, I could readily concur in both the conclusion and the opinion of the majority of the court, but I think I have shown that such is not the fact as shown by the record and by the statutes of the state. My Brothers have acted under another false premise in deciding this case; and that is, that the defendant waived her constitutional and statutory right to affidavit, complaint, or warrant in not requesting it before the trial in the municipal court. This premise is false, for the reason that the defendant could not have waived or dispensed with the necessity of the affidavit or complaint which the Constitution and statutes have ordained and required as the basis of all convictions for misdemeanors in this state. The existence of such affidavit or complaint is jurisdictional, and cannot be waived nor its absence consented to by the defendant. Consent can never confer jurisdiction as to the subject-matter. Neither the municipal court nor the county court of Tuscaloosa had any authority or right or power to proceed to a trial of this defendant without the existence of the affidavit or complaint which the law requires as the basis of all prosecutions for any misdemeanor. That the defendant consented to a trial without such affidavit or complaint, or even her request for same, could not confer jurisdiction on the municipal court or the county court to proceed to trial and conviction without such affidavit or complaint. I do not doubt the soundness of the proposition that the defendant or accused person in all criminal trials may waive constitutional and statutory rights conferred upon him by law, and may waive the protection of such provisions, but he cannot so waive them, when the effect will be to create a jurisdiction and a power in the court which it did not otherwise possess. Defendants cannot consent to be tried wholly without an accusation which the Constitution and statutes require as a condition precedent to the institution or prosecution of suits against them.โBishop on Criminal Proceedings, งง 112, 96, 123; Bisop, New Crim. Law, งง 996-1006. Jurisdiction to prosecute or convict for crime comes solely from the criminal law, and depends in no degree upon the consent of the litigant, whether state or citizen, sovereign or subject. Neither consent nor request can authorize a court to act in a cause outside the sphere which the law has ordained for it.โEberly v. Moore, 24 How. 147, 158, 16 L.Ed. 612; Scott v. Sandford, 19 How. 393, 15 L.Ed. 691. Where jurisdiction depends upon facts in pais, such as residence of parties, there may be a waiver; also, any formalities or irregularities as to indictments, informations, or complaints may be waived; but requisites, and certainly the existence of indictments, affidavits, or warrants required by law as a condition precedent to a prosecution or conviction, cannot be waived, or the prosecution consented to, in the absence of such documents. Nothing that is of the essence of jurisdiction, in either a civil or a criminal proceeding, can be waived. The absence of a declaration or a complaint in a civil suit, much less of an indictment in a criminal case, cannot be waived. The existence of a declaration or complaint which states no *1156 cause of action, or an indictment, affidavit, or complaint which charges no offense cannot support a judgment, though no objection was made upon the trial or on appeal, and though such trial for prosecution was expressly consented to, or even requested, by the defendant. Though the statutes in express terms require objections to complaints, indictments, or information to be made, if at all, at an early stage of the proceedings, yet a judgment on such insufficient complaint or indictment cannot be sustained, though no objection was interposed on the trial or appeal.โBishop on Criminal Procedure, งง 123, 112, Doyle's Cases, 110 Mass, 103; Newcomb's Case, 37 Miss. 383. With the limitations as to jurisdiction, it is a doctrine, to which there are few exceptions, that a party may waive any right which the law has given him, even a constitutional right. The right of waiver is a part of that principle of natural justice that one should not complain of that to which he has consented. But in criminal trials it is a rule of long standing, in both English and American courts, that for the protection of the accused courts will often refuse him the permission to make waivers of his constitutional or statutory rights as to his liberty or life, and, if he makes them, they will decline to hold him to the consequences. But as to this, there is probably a real, as well as an apparent, difference of opinion. In ancient times the benefit of counsel was denied persons charged with treason or felony. The judges then counseled the accused, to the end of preventing prejudicial waivers. A great criminal jurist has said that courts were so far of counsel to the prisoner that they should not suffer him to consent to that which was manifestly wrong and to his prejudice. It has always been the practice in this state and in the United States, as well as in many of the other states of the Union, to grant new trials to defendants in criminal cases, especially in capital cases, when a well-founded doubt exists as to the propriety of the conviction.โState v. Slack, 6 Ala. 676.
"Let us illustrate this principle of waiver in criminal prosecutions by applying it to the facts in this case: The Constitution and statutes together require an indictment as the basis for all prosecutions for felonies in this state, or an indictment, affidavit, or complaint in lieu thereof, as for all misdemeanors. This is required to support any conviction for any crime. The accused or defendant can no more waive the constitutional and statutory requirements of an affidavit and complaint in misdemeanor cases than he can an indictment in felony cases. His right to waive is no more extended in the one case than in the other, because each is necessary to the jurisdiction of the court to support a prosecution or conviction. The Constitution and statutes both provide that the accused is entitled to a copy of the affidavit, information, or complaint, to demand the nature and the cause of the accusation against him, and to have a copy thereof. This is a right secured to him by the Constitution and the statutes, but it is a right for his protection and benefit, and hence he may waive it. While he can waive the service or furnishing him with a copy of the accusation, he cannot waive the existence of it, nor the sufficiency of it, except as to form or irregularity. It is a well-settled law of this state that in creating local tribunals, such as municipal and other inferior courts, and in preserving their jurisdiction, the Legislature and courts should keep in view two fundamental and cardinal principles: First, municipal or inferior courts have such jurisdiction, and such only, as is expressly conferred or reasonably implied. A fair doubt as to the extent of the jurisdiction or power of such tribunals should be resolved against them; and, second, strict regard should be had to constitutional provisions, the object and purpose of which are to secure the liberty, and to protect the rights of the citizen. Our state and federal Constitutions have been made intentionally and expressly to contain the substance if not the words of many provisions of Magna Charta, to the end that no citizen shall be deprived of life, liberty, or property except by the judgment of his peers, or by the law of the land, among which provisions secured to every citizen is the right of trial *1157 by jury as for all criminal offenses. These provisions, cardinal as they are, and of the fundamental law of the land, should no more be violated or disregarded by the courts than by the Legislature. Courts unhesitatingly pronounce null and void the most solemn acts of the Legislature, if in violation of these cardinal and fundamental principles; and they should with equal care observe, maintain, secure, and preserve them to the citizen in all cases coming before them for review. These cardinal principles of the Magna Charta are memorable and revered because of their assertion of precious truths so necessary to the individual happiness, liberty, and life of the citizen. They are historic in their associations. They have served humanity faithfully as beacon lights in the progress of liberty and righteousness, and are the controlling parts of our fundamental law. They should not be overlooked nor disregarded in the powers granted to municipal or other inferior courts nor in the jurisdiction or power with which such courts are clothed. Lord Chatham said that these provisions of the Magna Charta were worth all the classics, because they protected the personal liberty and the property of all men, by giving security from arbitrary imprisonment and spoliation. He further said that to have procured this great charter, to have preserved and matured it, constituted the immortal claim of England upon the esteem of mankind. Under its provisions all persons, from those of the highest station to the humblest individual, are equally entitled to its protection, and equally bound to render it obedience. All men and the sovereign are governed by this general law. The entire structure of our government and laws rests upon these constitutional provisions which thus secure these rights to the individual. As to him this security and enjoyment of freedom and of property is everything, and to the government nothing, except in so far as it is an institution to award that blessing. It is a cardinal doctrine of English and American jurisprudence, declared in the Constitution of England, and written in all those of America, both state and federal, that any person accused of crime has a right to be informed of the nature and cause of the accusation, to have the offense charged against him fully, and plainly, substantially and formally described to him. This is but the dictate of justice and common law as well as constitutional. This informationโno matter by what named calledโought to contain all that is material to constitute the crime, and, as the Constitutions say, in the form prescribed by law. The purpose of such information is threefold: First, to enable the accused to make his defense; second, to enable the court to pronounce the proper judgment; third, to enable the accused to plead the judgment in bar of a second prosecution for the same offense."
172 Ala. at 351-62, 54 So. at 631-35.
With deference to the majority's opinion in the case at bar, the existence of inconsistencies and inaccuracies in the Alabama decisions handed down over the years addressing this issue of waiver of jurisdictional prerequisites requires resolution on something of a case-by-case basis.
I have carefully studied (1) those cases cited by the majority involving prosecutions by the State (Blankenshire v. State, 70 Ala. 10 (1881); Bolling v. State, 21 Ala. App. 244, 107 So. 40 (1925); Wells v. State, 245 Ala. 510, 17 So.2d 878 (1944); Ex parte State (In re: Goulden), 292 Ala. 704, 299 So.2d 325 (1974)), (2) the state prosecution cases cited as authority in all of the cases cited by the majority (Tatum v. State, 66 Ala. 465 (1880); Miles v. State, 94 Ala. 106, 11 So. 403 (1892); Williams v. State, 88 Ala. 82, 7 So. 1010 (1890); Sherrod v. State, 14 Ala.App. 57, 71 So. 76 (1916); Sanders v. State, 79 So. 312, 16 Ala.App. 531 (1918); Booth v. State, 21 Ala.App. 160, 105 So. 912 (1925); Ex parte Rogers, 12 Ala.App. 218, 67 So. 710 (1915); Ethridge v. State, 26 Ala.App. 600, 164 So. 397 (1935); Butler v. State, 130 Ala. 127, 30 So. 338 (1901); Vinson v. State, 26 Ala.App. 48, 152 So. 259 (1934); England v. State, 23 Ala.App. 393, 126 So. 174 (1930); Brook v. State, 155 Ala. 78, 46 So. 491 (1908); Johnson v. State, 105 Ala. 113; 17 So. 99 (1895), Bush v. State, 27 Ala.App. 30, 167 *1158 So. 335 (1935)), (3) the cases cited in Justice Maddox's dissent in Dison (Pierce v. State, 38 Ala.App. 97, 77 So.2d 507 (1954), cert. denied, 262 Ala. 702, 77 So.2d 512 (1955); Horn v. State, 22 Ala.App. 459, 117 So. 283 (1928); Nicholas v. State, 32 Ala.App. 574, 28 So.2d 422 (1946); Champion v. State, 39 Ala.App. 10, 95 So.2d 803 (1957), cert. denied, 266 Ala. 696, 95 So.2d 804 (1957); Smith v. State, 73 Ala. 11 (1882); Laney v. State, 109 Ala. 34, 19 So. 531 (1896)); and (4) the line of authorities relied upon by this Court in its opinion in Dison as well as numerous other decisions which support that view. Study of these cases leads to the conclusion that the cases in categories (1), (2), and (3) above either are distinguishable, or have been implicitly overruled, or, in fact, support the Dison decision. This conclusion is illustrated by the somewhat chronological briefing of these cases which follows:
In Tatum v. State, supra (1880), the Supreme Court cited Code of 1876, งง 4722 (the amendment statute that preceded Title 13, ง 346, Code of 1940, which was repealed in 1975) and 4729, and stated that "[o]n appeal to the Circuit Court, the cause was triable de novo, and no objection could be made to any inaccuracy or imperfection in the proceedings before the County Court." 66 Ala. at 466. The Court held that the trial court did not err in permitting the state, upon defendant's demurrer to the solicitor's statement, to amend the statement to allege the time the alleged offense was committed. Clearly, this is the type of nonfatal defect which could be cured by amendment under the amendment statute, since such a defect does not deprive the court of its jurisdiction. The same cannot be said with respect to the oath required for a complaint.
In Blankenshire v. State, supra (1881), a case cited by the majority in its opinion, the defendant did not object before the justice of the peace as to the failure of the affidavit and warrant to charge any offense known to law. However, on appeal to the county court, the defendant objected to the court's allowing the solicitor to file his complaint which did state an offense.
The Court, citing Tatum, supra, held that "the amendment was rightly allowed." 70 Ala. at 13. There is no question, however, that Blankenshire was implicitly overruled by Miles v. State, supra (1892). The same question presented in Blankenshire was presented in Miles, namely whether, on appeal to the circuit court, the solicitor (now district attorney) could be permitted to file his complaint stating an offense when the affidavit of complaint before the justice of the peace (now the district court), which was not objected to by the defendant, did not charge an offense. The Supreme Court in Miles held that such was impermissible, stating:
"Mere inaccuracies or imperfections in the proceedings before the county court cannot be taken advantage of on appeal to the circuit court, where the trial is de novo, but this rule cannot be extended so as to authorize the arrest of a person, and subject him to a prosecution in the circuit court upon a mere statement of the solicitor, unsupported by an affidavit which charges an offense, and which affidavit is insufficient to authorize the issue of a warrant of arrest.... The constitution of the state protects persons from arrest, unless there is probable cause, supported by affidavit. An affidavit so defective in this respect as not to charge an offense does not authorize the issue of warrant of arrest, and furnishes no foundation for a prosecution to conviction upon the affidavit or statement of complaint by the solicitor....
"... We are clearly of the opinion that the court properly sustained the demurrer to the affidavit. The judgment of the court judicially ascertained and adjudged that there was no sufficient complaint or affidavit which authorized the issue of the warrant and the arrest of the defendant, and both should have been quashed. We find no warrant in the law of this state for putting a party upon trial upon the mere statement of the solicitor, unsupported by a *1159 sufficient complaint under oath." (Emphasis added.)
94 Ala. at 107-08, 11 So. at 403-04. It is worth pointing out that, just as in Dison, the defendant in Miles did not demur to the affidavit made for his arrest before the justice of the peace; he demurred to it on appeal to the circuit court.
Smith v. State, supra (1882), was a bastardy proceeding. In that case, the court noted that "[t]he proceeding is penal, but is strictly neither criminal nor civil. It partakes somewhat of both." (Emphasis added.) 73 Ala. at 11. Thus, because the defendant did not raise before the justice of the peace the failure of the warrant "to aver the prosecutrix was a single woman," the Court held that his motion to quash the affidavit and warrant "came too late," stating "[w]e will not lay down very technical rules in a proceeding like this." 73 Ala. at 12, 14.
In Williams v. State, supra (1890), the defendant was tried and convicted of larceny before the justice of the peace and on appeal in the city court. The defendant moved to arrest the judgment of conviction in the city court on the ground that the justice of the peace had no jurisdiction of the offense because the affidavit failed to aver the value of the property stolen. The Court noted that "[t]he question is not whether the affidavit and warrant should have been quashed on seasonable objection, but whether it is sufficient to uphold the judgment of the justice of the peace for the purposes of an appeal to the circuit or city court." 88 Ala. at 83, 7 So. at 102. The court, therefore, reached the merits, and held that, in this instance, the affidavit did indeed meet the statutory requirements (then ง 4204, Code of 1876) for bringing a misdemeanor charge before a justice of the peace. The Court noted that this statute "dispenses with the fullness and accuracy of description of the offense, and altogether with some averments necessary and observed in indictments." (Emphasis added.) Id. Thus, the Court held that neither the value nor the ownership of the property stolen is a jurisdictional fact essential to be stated. This, I think is quite different from the omission of the oath from the affidavit of complaint. For without the oath, the statutory requirement of an "affidavit" would not have been met.
We are not given any facts in Johnson v. State, supra (1895). The court merely cites Tatum, supra, and Blankenshire, supra, and summarily holds that the defendant's motion to dismiss in criminal court based upon alleged inaccuracies and imperfections in the proceedings before the justice of the peace were without merit. The Court does not, however, describe exactly what kind of inaccuracies and imperfections defendant alleged. In light of Miles, it is doubtful that this case is any authority whatsoever.
Laney v. State, supra (1896), was another bastardy case. The defendant moved to dismiss the proceedings in circuit court, alleging various insufficiencies in the affidavit of complaint and in the warrant. Citing Smith, supra, the Court noted that bastardy proceedings are statutory (Code of 1876, งง 4842 through 4857). If these statutes are complied with, the justice of the peace has jurisdiction. The Court further noted that these statutes do not even require the complaint to be made in writing, and, thus, held that the complaint and warrant in this case met the statutory requirements, and that the defendant had waived any insufficiencies by not raising them before the justice of the peace.
The case of Butler v. State, supra (1901), is good authority for the Dison opinion. The Supreme Court in Butler, citing Miles, supra, and Johnson, supra, held that the defendant's motion to quash the solicitor's statement filed on appeal to the circuit court should have been granted because the affidavit of complaint made before the justice of the peace was wholly insufficient and, therefore, did not authorize the warrant issued nor the judgment of conviction entered thereon. The Court noted that such a complaint would not support the judgment of the justice, nor the statement filed by the solicitor in county court, nor the judgment in the county *1160 court. Holding the judgments invalid, the court ordered the defendant discharged.
In Brooke v. State, supra (1908), this Court held that the trial court erred in sustaining the State's demurrers to the defendant's pleas of former jeopardy. The defendant had been previously prosecuted by a municipality for the same offense against the state. It is interesting that, in this case, the State argued that the judgment of the mayor's court acquitting the defendant was void because the defendant had been arrested without a warrant. The court dismissed this argument, noting that warrantless arrests were authorized under certain circumstances by statutes. As noted hereinabove, a warrantless arrest or an arrest made on a fatally defective warrant (i.e., one not based upon oath) is purely a matter of personal jurisdiction, unless the defective warrant is subsequently used as the mechanism by which the defendant is charged and prosecuted. See Albrecht v. United States, supra.
The defendant in Ex parte Rogers, supra (1915), was convicted in recorder's court for violation of the prohibition laws. The defendant appealed to circuit court, where he moved to dismiss the prosecution on the grounds that the record on appeal did not reflect a formal judgment of guilt entered upon the jury's verdict, and, therefore that any judgment of the recorder was void. Apparently the judgment in the record did not expressly state that the defendant was "guilty"; rather, it merely recited his sentence. The Court of Appeals held that, on these facts, the judgment was not void, and that it would, therefore, support an appeal. The court further noted that, even assuming arguendo that the judgment was void, defendant's petition for writ of certiorari still could not be granted because his adequate remedy would be by petition for writ of habeas corpus.
Although the question of waiver of a defect in the original proceedings was not presented in any way in the case of Sherrod v. State, supra (1915), the Court of Appeals stated the following propositions of law:
"(3) To this end, a formal accusation sufficient to apprise the defendant of the nature and cause of the accusation is a prerequisite to jurisdiction of the offense. Const. 1901, ง 6; Butler v. State, 130 Ala. 127, 30 South. 3S8; Miles v. State, 94 Ala. 106, 11 South. 403; 12 Cyc. 221 (VI, H).
"(4) Irregularities in obtaining jurisdiction of the person may be waived, but a formal accusation by indictment, or information, or complaint supported by oath is essential to complete jurisdiction, and cannot be waived.โ12 Cyc. 221; Butler v. State, supra; Johnson v. State, 82 Ala. 29, 2 South. 466." 14 Ala.App. at 59, 71 So. at 78.
In Sherrod, the defendant pleaded former jeopardy to the prosecution in Bessemer City Court, setting up a judgment of acquittal in the Bessemer Recorder's Court for the same offense of using abusive language, which constituted a violation of a municipal ordinance. The Court noted that the defendant was arrested on March 2 based on a complaint and warrant made out in the city court on February 27. Thus, the court concluded that, all requisites present, the city court had jurisdiction of the person and the offense, and the burden was on the defendant to prove that the recorder's court acquired its jurisdiction over the person and the offense prior to March 2. The defendant admitted that no formal charges had been made in the recorder's court, and that the defendant did not actually appear before the recorder until March 5, three days after the defendant had been arrested and admitted to bond on the process of the city court. The Court of Appeals affirmed the defendant's conviction in City Court, noting that the defendant's remedy would have been to set up the pendency of the city court prosecution in recorder's court, rather than vice versa.
On review by certiorari, the Supreme Court reversed the decision of the Court of Appeals (Sherrod v. State, 197 Ala. 286, 72 So. 540 (1916)) and held that, by arresting the defendant, committing him to jail, and requiring him to post a bond returnable to *1161 the recorder's court, all prior to defendant's arrest pursuant to the complaint and warrant issued by the city court, the recorder's court acquired jurisdiction of the person of the defendant to the exclusion of the city court. It is significant to point out that, although the State sought to prosecute the defendant before the city court, the defendant was prosecuted before the recorder's court for a violation of a municipal ordinance. Hence, the following statement in this Court's opinion:
"It is also conceded that the police officer had the right, under the existing law, to arrest the accused without affidavit or warrant, and take him before the recorder for the offense with which he was tried, as being a violation of a city ordinance. The accused had the right, before conviction, to demand the nature and character of the accusation against him, but this he could waive.โMcKinstry v. City of Tuscaloosa, 172 Ala. 344, 54 South. 629; Dowling v. City of Troy, 173 Ala. 468, 56 South. 118; Birmingham v. O'Hearn, 149 Ala. 307, 42 South. 836, 13 Ann.Cas. 1131; Aderhold v. Anniston, 99 Ala. 521, 12 South. 472."
197 Ala. at 287, 72 So. at 541. See discussion, supra.
The court in Sanders v. State, supra (1918) quoted the passage quoted above from the opinion of the Court of Appeals in Sherrod and held that the defendant's demurrers to the jurisdiction of the circuit court, on the ground that the justice of the peace could not issue warrants returnable to the circuit court, were properly overruled because defects with respect to the issuance of warrants involve jurisdiction of the person, and in the absence of a proper plea in abatement, the issue of the propriety of the warrant was deemed waived. The court, however, expressly noted that the affidavit upon which the defendant was tried was sufficient and not subject to the demurrers interposed by the defendant. The case of Booth v. State, supra (1925), is identical to the Sanders case, and the court cited Sanders as authority in its summary opinion.
The next case, Bolling v. State, supra (1925), is another case cited in the majority opinion. When read closely, the distinctions between Bolling and Dison are clear. In Bolling, the defects which the defendant alleged deprived the circuit court of jurisdiction were with respect to the appeal bond given in order to transfer the case from the recorder's court to the circuit court. The court noted that because of these defects, the bond may have been insufficient to transfer the case to circuit court. Nevertheless, the court noted further that the circuit court had original jurisdiction over the crime charged, to be exercised upon a formal accusation. Therefore, the court held that, because the defendant here expressly agreed to go to trial in circuit court on the original affidavit, which affidavit the court noted to be sufficient and unchallenged, he was held to have waived defects in the appeal bond, which the court expressly stated to be "a waiver of jurisdiction as to the person." 21 Ala.App. at 245, 107 So. at 40.
The case of Horn v. State, supra (1928), is also readily distinguishable from Dison. The question presented in Horn concerned whether there was a variance between the affidavit, upon which the defendant was convicted in county court, and the solicitor's complaint filed on the appeal to circuit court. No question of waiver was raised. The defendant, Horn, and Ben Head were convicted in the county court of unlawfully presenting a pistol. The prosecution in county court was commenced by a "perfectly valid" affidavit and warrant charging a joint offense against the defendant and his co-defendant, Head. On appeal to the circuit court, however, the court granted a severance, and the state court elected to try Horn. A complaint was filed charging Horn alone with having the pistol. The defendant moved to strike the complaint on the ground that it departed from the affidavit on which it was based. The court cited Miles, supra, and noted that the complaint must rest upon a charge supported by affidavit and that there cannot be a variance. The court held, however, that although jointly charged in the affidavit, *1162 the defendants were severally liable. Therefore, the court concluded that "when severance is granted and the defendant is alone on trial, he cannot be injured in his rights by being presented.with a complaint charging him alone with the offense and which does not change the crime set out in the affidavit." 22 Ala.App. at 461, 117 So. at 284.
The only issues raised in England v. State, supra (1930), were with regard to the sufficiency of or the propriety of admitting evidence. And, in Vinson v. State, supra (1933), like in Bolling v. State, supra, the irregularities alleged in the circuit court were with respect to the appearance bond in the justice of the peace court. Moreover, Vinson was another bastardy proceeding.
Ethridge v. State, supra (1935), is another case which supports the Dison opinion. The court in Ethridge stated the following:
"The point of decision referred to is: Does the affidavit, in this case, which charged the defendant with `a violation of the prohibition law,' authorize the issuance of a warrant of arrest, and support a judgment of conviction in the county court, and a judgment of the circuit court, on appeal, of having possession of prohibited liquors?
"The answer is, it does not for many reasons. An accusation of this character, whether by affidavit or indictment, is void and confers no jurisdiction upon the court or courts to hear and determine a charge for having in possession prohibited liquors. An affidavit such as the one under discussion being void, as stated, is a matter of which the courts must take notice ex mero motu; and a complaint filed by the solicitor in the circuit court on appeal from a conviction in the county court in such case will not suffice to give the circuit court jurisdiction." 26 Ala. App. at 601, 164 So. at 398.
After summarizing งง 5 and 6 of the Constitution of Alabama (1901), the Court of Appeals followed this Court's decision in the case of Slater v. State, 230 Ala. 320, 162 So. 130, which held that an affidavit containing only a blanket charge of violating the prohibition law would be held void. The court in Etheridge further stated:
"`This want of an affidavit, the initial step in the prosecution, goes to the jurisdiction of the court. The court must take notice ex mero motu. Thomas v. State, 166 Ala. 40, 52 So. 34; Dunklin v. State, 134 Ala. 195, 32 So. 666.
"`A complaint filed by the solicitor in the circuit court on appeal from a conviction in the county court in such case will not suffice to give the circuit court jurisdiction.'
"There are numerous opinions of this court not in harmony with the decision in this case. Such decisions are hereby modified or overruled, and future proceedings of this character must conform to this opinion." 26 Ala. App. at 602, 164 So. at 399.
In Wells v. State, 31 Ala.App. 383, 17 So.2d 876, cert. denied, 245 Ala. 510, 17 So.2d 878 (1944), the Court of Appeals held that the affidavit charging the defendant with a violation of the Alabama Beverage Control Act was not void, although it conceded the affidavit to be "imperfect, confused and ineptly executed." 31 Ala.App. at 385, 17 So. at 877. Specifically, the defendant apparently claimed the original affidavit was void because the opening line recited that the affiant personally appeared before "Jno. B. Sockwell, Judge of the County Court," whereas the bottom line recited that the affidavit was "sworn to and subscribed before ... R.F. Fidley, Justice of the Peace." The court stated the following:
"In the County Court, however, no objection was made to the sufficiency of the affidavit; and appellant went to trial on same without protest. In the Circuit Court a complaint was filedโthough unnecessaryโwhich met all the requirements of the law.
"The situation here seems not dissimilar, in principle, at least, to that dealt with in the opinion in the case of Turner v. Town of Lineville, 2 Ala.App. 454, 56 So. 603, 604, where this court said: `Under *1163 the statute governing appeals from judgments of justices of the peace in criminal cases, if no objection to the sufficiency of the affidavit or warrant is raised before the justice, on the trial de novo had on appeal in the circuit or county court, a complaint may be there filed charging the defendant with a criminal offense, though the affidavit and warrant on which the defendant was tried before the justice of the peace did not charge any criminal offense whatever.' And see Worthington v. City of Jasper, 197 Ala. 589, 73 So. 116; and Blankenshire v. State, 70 Ala. 10.
"So we conclude and declare that appellant, by going to trial in the County Court, without objection, on the affidavit above, waived all defects therein. The Attorney General cites, and well he may, our opinion in the case of Bush v. State, 27 Ala.App. 30, 167 So. 335, as concluding against the contentions of appellant's able counsel on this appeal on the subject presently discussed. We will not repeat what we there said, but consider same applicable to the situation presented." 31 Ala.App. at 385, 17 So.2d at 877.
For reasons discussed above, it was clearly erroneous for the Court of Appeals to rely on the cases involving municipal prosecutions. Reliance upon Blankenshire v. State, supra, is equally erroneous, since it is clear that that case was implicitly overruled by Miles v. State, supra. Nor is Bush v. State, supra (1935), authority for this case. In Bush, the defendant objected in circuit court to the affidavit and warrant of arrest before the county court because they were not "signed," assumedly by the affiant. There, the court correctly held that the affidavit need not be "signed" by the affiant. This holding, however, does not change the requirement that the affidavit be verified by the proper authority before whom the affiant made his statement.
This Court denied the defendant's petition for writ of certiorari in Wells v. State, supra (1944) (also cited by the majority); however, it is interesting to note that, for the proposition that objections to the affidavit are not available when raised for the first time on appeal, this Court cited Vinson v. State, supra, and England v. State, neither of which, as explained above, is at all on point. For these reasons, I do not think that either Wells decision is good authority for overruling Dison. Furthermore, the defects complained about in the affidavit in Wells were not so fatal as to render the affidavit any less of an affidavit, unlike in Dison, where the defect (no verification) rendered the document no affidavit at all.
In Nicholas v. State, supra (1946), again the alleged defect in the affidavit was nonfatal. The defendant was arrested on a warrant issued upon the affidavit, which also served as the complaint in the recorder's court. The defendant was convicted and appealed to circuit court, where, for the first time, he objected to the failure of the affidavit to state his name within the body of the affidavit, although the prayer for arrest named the defendant. The affidavit read, in pertinent part, as follows:
"`Wade Creech ..., on being sworn, doth depose and say that he has probable cause for believing and does believe that within the past 6 months ____within the limits of the City of Mobile, Alabama, assaulted and beat George Portier, against the peace and dignity of the State of Alabama, and prays for a warrant for the arrest of the said Allen E. Nicholas.'" (Emphasis added.)
In all other respects, the affidavit was proper and sufficient. The omission of defendant's name was a minor inaccuracy clearly within the terms of the amendment statute then in effect (Title 13, ง 346, Code of 1940), and was not the sort of defect that would have rendered the affidavit void such as if it were not made under oath or failed to charge an offense.
The defect in Champion v. State, supra (1956), is very similar to the one in Nicholas, supra. In Champion, however, the name omitted from the body of the affidavit of complaint was that of the complainant, yet the complainant, L. C. Marshall, signed the affidavit at the bottom just *1164 above the subscription or verification. Clearly, this was a nonfatal defect which did not render the affidavit void.
In Pierce v. State, supra (1954), however, no affidavit whatsoever appeared in the record. The Court of Appeals noted that the solicitor's complaint filed on appeal to the circuit court must, nevertheless, rest upon a charge supported by an affidavit. Citing 42 C.J.S., Indictments and Informations, ง 86, p. 948, and that court's opinion in Nicholas, supra, the court analogized the solictor's complaint to the common law information, which it concluded was not rendered void by a failure to have it verified, and which did not deprive the court of its jurisdiction. The court, therefore, held that the defendant waived his right to challenge the solicitor's complaint, having failed to raise it below. Clearly, this decision is wrong, as pointed out in the majority opinion in Dison, and it has, in fact, been implicitly overruled by cases such as Sparks v. State, 39 Ala.App. 517, 104 So.2d 764 (1958); Ex parte Thaggard, 42 Ala.App. 229, 159 So.2d 813, cert. denied, 276 Ala. 117, 159 So.2d 820 (1963); Leonard v. State, 52 Ala.App. 212, 290 So.2d 673 (1974); and Nikolic v. State, 439 So.2d 828 (Ala.Crim.App. 1983), discussed infra. Indeed, Pierce was decided directly contrary to this Court's decision in Miles v. State, supra, which was then, and still is, good authority. The following statement from Justice Mayfield's dissent in McKinstry v. City of Tuscaloosa, supra, bears repeating:
"If a defective affidavit or complaint will render a conviction and sentence based thereon absolutely void on collateral attack (see Johnson's Case, 82 Ala. 29, 2 South. 466; Miles' Case, 94 Ala. 106, 11 South 403; Shivers' Case, 150 Ala. 505, 43 South. 565), then a fortiori the entire absence of any affidavit or complaint or information should render the judgment, conviction, and sentence void."
172 Ala. at 356, 54 So. at 633.
The final state prosecution case cited in the majority opinion is Ex parte State (re: Goulden), supra (1974). Goulden is another interesting case in that the State, as petitioner, argued that the defect in the indictment (i.e., the failure of the grand jury foreman to endorse the indictment as a "true bill") rendered the judgment of conviction thereon void, and that the judgment, being void, would not support an appeal. The Court of Criminal Appeals, following Strickland v. State, 51 Ala.App. 328, 285 So.2d 492 (1973), cert. denied, 292 Ala. 751, 292 So.2d 450 (1974), held that the omission of this endorsement on the indictment rendered the judgment of conviction without support, and the court reversed the judgment and remanded the case. This Court denied the State's petition, stating the following:
"Here, the trial court had jurisdiction of the subject matterโthe offense of forgeryโand of the person of the defendant. The failure of the foreman of the grand jury to endorse the indictment as a true bill did not deprive the circuit court of jurisdiction but it did render the indictment invalid to the extent that it would not support the judgment of conviction. Whitley v. State, 166 Ala. 42, 52 So. 203, Tit. 30, ง 89, Code 1940, and cases cited in the opinion of the Court of Criminal Appeals in this case. We have not checked every case cited in 12 Ala. Dig., Indictment & Information, Key No. 34(2), dealing with `a true bill,' but we have checked most of them, and in all that were disposed of on the absence of the true bill endorsement on the indictment, they were not dismissed, but were reversed and remanded." (Emphasis added.)
292 Ala. at 705, 299 So.2d at 326.
Although the opinion is somewhat lacking in analysis, the logic in the result reached is clear when certain propositions with respect to indictments are taken into consideration. As explained above in Part I, indictments are nonwaivable and must be in strictly correct form. As the Court of Criminal Appeals in Strickland, supra, noted:
"To be an indictment, the accusation must be a writing `presented' by a grand *1165 jury. Code 1940, T. 15, ง 228, McGee, Alabama Criminal Practice, p. 93. Being formulary, its mode of presentment and its indorsement as a true bill as prescribed by law (Code 1940, T. 15, ง 250, and T. 30, ง 89) are mandatory, McMullen v. State, 17 Ala.App. 504, 86 So. 175; Roan v. State, 225 Ala. 428, 143 So. 454 (dictum)." 54 Ala.App. at 279, 285 So.2d at 493.
Furthermore, though an indictment be lacking in some immaterial way, it cannot be amended or "corrected" without the consent of the defendant. Section 15-8-90 and White v. State, supra. Therefore, if the court on appeal notices a defect, even a nonfatal defect in the indictment, such as in Goulden, the indictment cannot support the judgment. A different situation exists with respect to a totally, and therefore fatally, defective indictment or a prosecution commenced without an indictment at all where one was required under Amendment 37, supra.[6] In those instances, the judgment of conviction is void, there being no authority whatsoever upon which the trial court could have proceeded. See Kennedy v. State, supra. Thus, minor defects in an indictment could not have been deemed waived by the defendant and the indictment deemed amended or corrected on appeal pursuant to an amendment statute. The defect in Goulden, and the defect in Dison, however, are not analogous. The essence of an affidavit is the verification that the affiant did indeed make an oath. On the other hand, the failure of the foreman to endorse an indictment as a "true bill" does not make it any less a "true bill." The nonverification of the complaint does indeed render the complaint unsworn and, it is, therefore, not an affidavit.
This analysis of the cases that serve as the foundation for the majority's view of the Dison question effectively destroys that foundation, leaving the majority's opinion without support. I further believe that this analysis profoundly exemplifies the principle that courts have the duty to cite as authority only those cases which actually stand for the proposition for which they are cited and which are in fact authority even upon the factual or procedural posture of the case in which they are cited. I am convinced that the confusion existing in this particular line of authorities is a direct result of courts giving blanket application to propositions of law stated in cases (e.g., that objections to an affidavit are not available when raised for the first time on appeal) without regard to the specific issue presented in those cases or to the nature of the proceedings in which the issue was raised. This is especially true in connection with the line of cases in which the courts have failed to expressly point out the distinction drawn in Alabama law between municipal and state prosecutions. Having stated my concern over this problem, I will proceed to discuss, again in a somewhat chronological briefing form, the long line of Alabama cases supporting the Dison opinion, and which, by its opinion today, the majority must now be deemed to have overruled, with no pertinent authority for doing so.
Beside Miles v. State, Butler v. State, and Ethridge v. State, discussed above, there are numerous early decisions that hold that a fatal defect in an affidavit of complaint on which a prosecution is based renders the judgment of conviction void. In Johnson v. State, 82 Ala. 29, 2 So. 466 (1887), the defendant pleaded former jeopardy in a circuit court prosecution for larceny, setting out an affidavit and warrant of arrest upon which a prosecution for the same offense had been commenced before a justice of the peace. This Court, through Justice Somerville, affirmed the trial court's order sustaining of the state's demurrer to the defendant's plea, on the ground that the process by the justice of the peace was void:
"The affidavit and warrant under which the appellant was arrested by the justice of the peace, and under which the proceedings *1166 before him occurred, alleged no probable cause to believe that the defendant was guilty of the offense charged. The constitution prohibits the issue of any warrant to seize or arrest any person `without probable cause, supported by oath or affirmation.' Const. 1875, art. 1, ง 6; Code 1876, งง 4650, 4651. For this reason the process was void, and the proceedings did not put the defendant in jeopardy. He was entitled at any time to his discharge under the writ of habeas corpus, on petition to the proper tribunal."

(Emphasis added.) 82 Ala. 31, 2 So. 467. It bears repeating that the Court stated that, the process being void, the defendant was "entitled at any time to his discharge." Id.
The defendant in Cross v. State, 117 Ala. 73, 23 So. 784 (1898), also set up the plea of former jeopardy to an indictment charging the defendant with larceny. In his plea, the defendant claimed that he had been arrested and charged for the same offense by a complaint and a warrant issued thereon by a justice of the peace. The county court sustained the state's demurrer to the defendant's plea and the defendant was thereafter convicted. On appeal, this Court affirmed the conviction, holding that the defendant's plea was demurrable because the defendant failed to set out in his plea the written complaint made out before the justice of the peace. In so holding, the court stated the following:
"A justice of the peace, in the exercise of his jurisdiction of criminal offenses, cannot lawfully try and convict or acquit a supposed offender, or put him in jeopardy, except upon a written complaint or accusation charging the party with the offense. Such a written complaint or accusation is as essential to the jurisdiction of the justice as the indictment is to the jurisdiction of the circuit court; ..."

(Emphasis added.) 117 Ala. at 76, 23 So. at 785.
Although the case of Wiley v. State, 117 Ala. 158, 23 So. 690 (1898), does not present the same kind of jurisdictional problem at issue in Dison -type cases, the Court's definitional statements with respect to jurisdiction are particularly instructive. A complaint charging the defendant with the commission of a misdemeanor was filed before a justice of the peace, and a warrant was issued thereon. The defendant appeared and requested a jury trial; he was therefore bound over to the next criminal court term on bail paid. Shortly thereafter, the clerk of the circuit court issued what was in effect another warrant for defendant's arrest based on the warrant issued by the justice of the peace. Defendant was arrested on this second warrant and jailed until he gave an appearance bond, also for the next criminal court term. At that term, the defendant appeared and moved to dismiss for want of jurisdiction and then demurred to the complaint; both the motion to dismiss and the demurrer being overruled, the defendant was convicted. The defendant appealed after his motion in arrest of judgment was overruled. In reversing and rendering the case, this Court set out the following explanation of how jurisdiction is invoked in the courts in question:
"The criminal court of Pike County is an inferior court of record, created by statute, limited in jurisdiction to misdemeanors. Pamph. Acts 1888-89, pp. 631-636; Pamph. Acts 1890-91, pp. 391-394. All indictments for misdemeanors found by the grand jury, a constituent of the circuit court for the county, are transferred to the criminal court for trial, and on the transfer being made as the statutes prescribe the jurisdiction of the court attaches and the jurisdiction of the circuit court ceases. Original prosecutions are to be instituted or commenced in the court as the like prosecutions are commenced in the county courts. And in the county courts such prosecutions are commenced by an affidavit in writing, and the issue of a warrant of arrest; the affidavit being made before the judge of the court or a justice of the peace of the county, stating that the affiant has probable cause for believing *1167 and does believe that a designated misdemeanor has been committed in the county by the person named as defendant, and thereupon the judge or justice issues the warrant of arrest, the form of which is prescribed. Cr.Code 1886, งง 4204, 4205; Cr.Code 1896, งง 4600, 4601. From all judgments of conviction for misdemeanors by justices of the peace an appeal will lie to the criminal court, and in all cases the court is required to conform to the practice and rules of procedure of the circuit courts of the State.
"The jurisdiction of the court lies dormant unless it is quickened into exercise by the transfer of indictments from the circuit court, or by an affidavit and warrant of arrest corresponding to that on which the original jurisdiction of the county court depends, or by an appeal from a judgment of conviction of a misdemeanor rendered by a justice of the peace. These are the sources, and the onlyโthe exclusiveโ sources, of the jurisdiction. From its character and constitution, as with all other courts or tribunals of statutory creation and limited jurisdiction, its judgments cannot be supported unless the record shows affirmatively all jurisdictional facts, and a compliance in the course of its proceedings with all statutory requirements. 1 Bish.Cr.Proc. ง 722. The unquestionable jurisdiction and admitted powers of such courts or tribunals cannot be called into exercise without pursuing the mode or in any other than the manner prescribed by the law of their creation. 1 Smith, Lead.Cas. (8th Ed.) 1107....
"The case was not carried into the criminal court in any of the modes by which its jurisdiction could be put in exercise, and all of the proceedings therein are mere nullities. The judgment of conviction must be reversed."
(Emphasis added.) 117 Ala. at 159-61, 23 So. at 691. As the county court once was, the district court in Alabama is created by statute and has limited jurisdiction. Therefore, in order for its judgments to be supported, not only must the record affirmatively show all jurisdictional facts, but also it must show that all statutory requirements (e.g., complaint on oath) have been complied with in the course of the proceedings. Proceedings in which the court exercises its power without compliance with the mode or manner prescribed by law are "mere nullities." Id.
City of Selma v. Shivers, 150 Ala. 502, 43 So. 565 (1907), is an interesting case in that, while the court expressly notes that "[t]he prosecution, being one for the violation of a municipal ordinance, was quasi-criminal," the Court also stated that "[t]he offense charged was one against the criminal laws of the state, as well as against the ordinance of the municipality." 150 Ala. at 504, 43 So. at 566. The defendant was convicted in the mayor's court, but on appeal to the city court the defendant moved to quash the proceedings on the ground that the affidavit upon which the defendant was prosecuted in the mayor's court was fatally defective in that it did not affirm a probable cause for believing the defendant was guilty of the offense charged. (For aught that appears from the opinion, defendant did not move to quash the affidavit in the proceeding before the mayor's court.) The defendant's motion to quash was granted, and this Court affirmed, noting that, although the affidavit stated that the affiant had "probable cause for believing, and does believe" that the offense was committed, it did not state that the affiant had "probable cause for believing" the defendant was guilty of the offense charged. Id. This Court held that this omission "rendered the affidavit fatally defective and void," citing Monroe v. State, 137 Ala. 88, 34 So. 382 (1902); Butler v. State, supra; Miles v. State, supra; Johnson v. State, supra; and Code of 1896, ง 4600, which provided:
"Warrant of arrest issued by judge or justice on affidavit.โA party aggrieved, or desiring to bring a charge of misdemeanor before the county court, may apply to the judge thereof, or to some justice of the peace of the county, for a *1168 warrant of arrest; and, upon making affidavit in writing, that he has probable cause for believing, and does believe that an offense (designating the misdemeanor by name, or by some other phrase which, in common parlance, designates it) has been committed in said county by C.D. (naming the offender), on the person (or property, as the case may be) of A.B. (naming the person injured), then the judge of said court, or justice of the peace, shall issue his warrant of arrest." (Emphasis added.)
Thus, rather than relying on municipal prosecution cases to the contrary, such as those cited in the majority opinion, which were decided prior to Shivers (namely, City of Selma v. Stewart, 67 Ala. 338 (1880); Aderhold v. City of Anniston, 99 Ala. 521, 12 So. 472 (1892); and City of Birmingham v. O'Hearn, 149 Ala. 307, 42 So. 836 (1906)), the Court in Shivers held that the failure of the affidavit to comply strictly with the terms of the above statute rendered the affidavit void.
Chappell v. State, 156 Ala. 188, 47 So. 329 (1908), was a habeas corpus proceeding in which a majority of the Court held that the defendant, who had been imprisoned, was entitled to be discharged because the affidavit (stating only that the affiant believed "in his opinion" the defendant unlawfully delivered liquor) presented to the justice of the peace would not support that court's issuance of the mittimus (a court order to the sheriff to imprison the one named thereon). In so holding, the court noted that the affidavit alone is that to which the jurisdiction of the justice of the peace attaches, and, citing and quoting from Butler v. State, supra, the Court stated that since a judgment on such a complaint would be a nullity because jurisdiction does not attach, "certainly a mittimus issued [thereon] would be likewise a nullity." 156 Ala. at 192, 47 So. at 330. The Court went on to hold:
"The prisoner must be discharged, as is expressly provided by the statute: `(3) Where the process is void in consequence of some defect in matter or substance required by law.' Code 1896, ง 4838; Code 1907, ง 7033. Mere irregularity will not avail, since habeas corpus is not serviceable to review the action of a tribunal having acquired jurisdiction. Ex parte McGlawn, 75 Ala. 38." (Emphasis added.) Id.

The majority opinion in McKinstry v. City of Tuscaloosa, supra, made an attempt to distinguish the case of Arzumanian v. City of Birmingham, 165 Ala. 374, 51 So. 645 (1910); however, after closely reading Arzumanian, I find that I cannot reconcile the two cases. The defendant in Arzumanian was convicted in the police court, whereupon he appealed to the criminal court, where he was again convicted. On appeal, this Court noted that there were no complaints filed against the defendant in the record of the proceedings of either court, although the judgment entry from the police court recited that the defendant was found guilty as charged in the complaint. The first appeal bond given by defendant was made payable to the city; the second to the state for the use of the city. The Court noted that this indicated the prosecution was for a municipal ordinance violation; however, the criminal court judgment recited a prosecution by the state, thus indicating a prosecution under a state criminal statute. The Court stated the following rule:
"There are circumstances under which an arrest may be made without a warrant, but the jurisdiction of the court to hear and determine must be invoked by an affidavit or complaint in writing to serve the purposes already indicated, and in order to meet the defendant's right to demand the nature and cause of the accusation against him, and have a copy thereof...." (Emphasis added.) 165 Ala. at 376, 51 So. at 646.
The Court also discussed the holdings of Aderhold v. City of Anniston, supra; Blankenshire v. State, supra; and Miles v. State, supra, and concluded that, upon the state of the record in this case, the want of a complaint in the criminal court was error requiring reversal. Although the opinion of the court did not expressly state that the *1169 defendant failed to make any objection to the want of a complaint, the Court did note that the defendant
"did not commit himself to the regularity or jurisdictional validity of convictions by executing such bonds as were required of him in order that he might have the judgments of conviction revised. In a government of law every interference with life, liberty, or property must be in accordance with due process, and there must be a record of some sort for the justification of the officers of the law in executing its mandate." 165 Ala. at 376, 51 So. at 646.
In Hawkins v. State, 20 Ala.App. 285, 101 So. 514 (1924), the Court held that a judgment of conviction in circuit court had to be reversed and the defendant discharged because the complaint filed by the solicitor was not predicated upon, or supported by, an affidavit as required by law. The court stated the following:
"It is stated that this prosecution originated in the county court. But nowhere in the record does there appear any affidavit or warrant or other process necessary to confer jurisdiction upon the county court to try this defendant, nor is there any appeal bond in the record. And so far as this court can know the defendant, if tried in the county court, was tried upon oral complaint of some alleged aggrieved party, and this the law does not provide. The only manner provided by law for the commencement of a prosecution in this state is by the finding of an indictment or by the swearing out a warrant based upon probable cause of the officer issuing same.... In other words there must be either an affidavit and warrant or an indictment in order to commence a prosecution of this character or any other criminal charge. In the instant case as stated so far as this record shows this prosecution rested only upon a complaint filed by the solicitor which complaint was unsupported by affidavit. This being true the judgment of the conviction appealed from cannot be sustained." 20 Ala.App. at 285-286, 101 So. at 514. (Emphasis added.)
The court held this defect to be a patent error on the record which the court could notice on its own motion. In this case, however, the court noted that while the defendant did not object in the county court, he did move to strike the solicitor's complaint filed in the circuit court. Accord Knight v. State, 26 Ala.App. 429, 161 So. 457 (1935).
In Kyser v. State, 22 Ala.App. 431, 117 So. 157 (1928), the jurisdictional problem presented involved the power of the circuit court to try misdemeanor cases only upon an affidavit of complaint. The court held that such was not authorized by the statute. The court, nevertheless, espoused the following rules of jurisdiction:
"Jurisdiction of the offense and of the person must concur to authorize a court of competent jurisdiction to proceed to final judgment in a criminal prosecution. This to the end, a formal accusation sufficient to apprise the defendant of the nature and cause of the accusation is a prerequisite to jurisdiction of the offense. Irregularities in obtaining jurisdiction of the person may be waived, but a formal accusation by indictment, or authorized information, or complaint supported by oath, is essential to complete jurisdiction, and cannot be waived...." 22 Ala.App. at 432, 117 So. at 158.
In Slater v. State, 230 Ala. 320, 162 So. 130 (1935), the affidavit in question was held to be fatally defective in that it charged only a blanket violation of the prohibition laws. In so holding, the Court stated the following rules:
"This court has had occasion to consider the sufficiency of the original affidavit to confer jurisdiction of the offense, and sustain the issuance of a lawful warrant of arrest.

"We have held such proceedings void, violative of the bill of rights, for failure to show probable cause on oath (Johnson v. State, 82 Ala. 29, 2 So. 466; Butler v. State, 130 Ala. 127, 30 So. 338), for failure to sufficiently identify or specify the *1170 offense charged (Miles v. State, 94 Ala. 106, 11 So. 403), and because of insufficiency of a statute to define or specify the acts which are denounced as criminal (response to certified questions from Court of Appeals, in State v. Skinner, 20 Ala.App. 204, 205, 101 So. 327). "...
"This want of an affidavit, the initial step in the prosecution, goes to the jurisdiction of the court. The court must take notice ex mero motu. Thomas v. State, 166 Ala. 40, 52 So. 34; Dunklin v. State, 134 Ala. 195, 32 So. 666.
"A complaint filed by the solicitor in the circuit court on appeal from a conviction in the county court in such case will not suffice to give the circuit court jurisdiction. Miles v. State, supra; Butler v. State, supra.
"In cases of indictment held invalid by this court, and due to be quashed, the practice is not to quash the indictment here, but remand the cause to the trial court with directions to quash, so that proper orders may be there made to hold the accused for a new indictment. Dunklin v. State, supra.
"But where the initial affidavit in a misdemeanor case is not merely irregular, but void, conferring no jurisdiction, and the statute of limitations has perfected a bar, the defendant should be here discharged. Miles v. State, 94 Ala. 106, 11 So. 403; Butler v. State, 130 Ala. 127, 30 So. 338."
(Emphasis added.) 230 Ala. at 322, 162 So. at 132-33. Accord Oldham v. Town of Rogersville, 27 Ala.App. 218, 169 So. 331 (1936), and Crooks v. State, 31 Ala.App. 308, 15 So.2d 913 (1943).
The affidavit in Slaton v. State, 27 Ala. App. 243, 170 So. 83 (1936), was held to be insufficient in that it stated that the "[affiant] has probable to believe," even though the omission of the word "cause" was the result of a clerical error. The court noted that it must "consider the record as here submitted, and may not assume that the appellant was in fact tried upon a correct affidavit or complaint." 27 Ala.App. at 244, 170 So. at 84. For aught that appears from the opinion, the defendant never objected to this insufficiency, yet the court held that this insufficiency in the affidavit deprived the court below of jurisdiction, which defect the court must notice ex mero motu.
The case of Woodham v. State, 28 Ala. App. 62, 178 So. 464 (1938), bears substantial similarities to Dison. In Woodham, the prosecution of the defendant was begun by an information filed by the county solicitor without benefit of an affidavit or indictment. A judgment of conviction was entered in the circuit court upon this information. The court noted:
"We designate the judgment as `purported judgment' for the reason it does not affirmatively appear from the record that the trial court properly acquired jurisdiction to try and determine this case; and unless this fact affirmatively appears from the record, the trial court was without authority to render judgment, and if judgment is rendered, in the absence of jurisdiction, the pronouncement of the court would be coram non judice and therefore without force and effect.

"In cases of this character the statute provides: `All prosecutions for a violation of any provision of this chapter [Chapter 167, Art. 2 of the Code 1923], or of any other law, for the suppression of the evils of intemperance, may be begun by affidavit as well as by indictment,' etc. Code 1923, ง 4646." (Emphasis added.)
28 Ala.App. at 63, 178 So. at 465. The court then quoted from the Alabama Constitution (1901), ง 6, and stated:
"The manifest purpose of this provision is to accord to every citizen security against the arbitrary action of those in authority, and to place him under the protection of the `law of the land,' which is synonymous with the expression, `due process of law.'"
28 Ala.App. at 64, 178 So. at 565. The court then held as follows:

*1171 "In the absence of an indictment, or an affidavit upon which this prosecution was begun, the trial court was without jurisdiction to try and determine this case....
"The solicitor in this case had no authority to file the `Information'; nor did the trial court have authority to assume jurisdiction of the subject-matter involved. This rendered the judgment, from which this appeal was taken, null and void and of no force and effect. Such judgment will not support an appeal. It is hereby dismissed, and appellant ordered discharged from further custody in this proceeding; ..." (Emphasis added.) Id.

In Jemison v. State, 28 Ala.App. 228,181 So. 911 (1938), a case on point, the court held that, where the record disclosed that the circuit court's "jurisdiction to try the case is an unsworn `complaint' filed by the solicitor the day of trial," such was entirely insufficient and the judgment thereon erroneous. (Emphasis added.) Id.
In Smith v. State, 28 Ala.App. 572, 190 So. 99 (1939), the defendant was originally tried in the county court without an affidavit or warrant. The court held that, therefore, the county court had no jurisdiction and the proceedings were void and of no effect. In holding that the defendant was due to be discharged and the appeal dismissed, the court stated:
"This want of an affidavit in writing, the initial step in the prosecution, goes to the jurisdiction of the court, and this court must take notice ex mero motu. Ethridge v. State, 26 Ala.App. 600, 601, 164 So. 397; Slater v. State, 230 Ala. 320, 322, 162 So. 130.
"A complaint filed by the Solicitor in the circuit court on appeal from a conviction in the county court in such case will not suffice to give the circuit court jurisdiction. Slater v. State, 230 Ala. 320, 322, 162 So. 130. The circuit court not having acquired jurisdiction to try and determine this case, its purported judgment of conviction is coram non judice, hence void, and a void judgment will not support an appeal. This appeal is accordingly dismissed, and an order is here entered discharging this appellant from further custody in this proceeding. Appellant discharged."
(Emphasis added.) 28 Ala.App. at 573-74, 190 So. at 100.
In Sparks v. State, 39 Ala.App. 517, 104 So.2d 764 (1958), another case on point, the affidavit named no affiant, although it had two oath takers. The court concluded that this affidavit was void, as was the warrant issued thereon. The court remarked:
"Being still-born, amendment cannot breathe life into it as was possible in Champion v. State, ... 95 So.2d 803." 39 Ala.App. at 518, 104 So.2d at 765.
The court held that the proceedings were void ab initio, and therefore, that the conviction in county and circuit court must be reversed and the defendant discharged.
And in a very short opinion, the Court of Appeals in Dennis v. State, 40 Ala.App. 480, 115 So.2d 125 (1959), reversed the defendant's conviction where the prosecution originated upon an unsigned and unsworn complaint:
"The originating affidavit of complaint is unsigned and unsworn, nor did the clerk sign the jurat. The trial court never acquired jurisdiction, a matter which we notice ex mero motu. Therefore, the appellant is due his discharge. Smith v. State, 28 Ala.App. 572, 190 So. 99.
"Upon authority of Sparks v. State, 39 Ala.App. 517, 104 So.2d 764, and cases therein cited, the judgment below is
"Reversed and rendered." Id.

Although the prosecution in Taylor v. City of Decatur, 40 Ala.App. 571, 117 So.2d 786 (1959), was by a city for a violation of a city ordinance, the court held that the defendant, who had waived his right to a complaint in circuit court, could, nevertheless, demur to the original complaint sent from the recorder's court. The court stated:
"No complaint anew was filed by the city on the trial de novo. Taylor did not demand one, but filed a demurrer to original *1172 complaint sent up from the recorder's court.
"Thus Taylor waived his right to a complaint [in circuit court].
"...
"However, we do not consider he waived his right to demur. In Worthington v. City of Jasper, 197 Ala. 589, 73 So. 116, we find:
"`The original affidavit on which defendant was tried and convicted in the recorder's court charged no offense within the penalty of the ordinance; but, since no objection was there taken by the defendant to the affidavit, he could not avail of its deficiency in the circuit court where, as stated, the trial was de novo. Turner v. Town of Lineville, 2 Ala.App. 454, 56 So. 603.
"`But when the "statement" became in the circuit court the source of the charge on which he was tried, the defendant had a right to question its sufficiency by appropriate methods. This he did both by motion and by demurrer to the "statement".' ..." 40 Ala.App. at 573, 117 So.2d at 787.
Leonard v. State, 52 Ala.App. 212, 290 So.2d 673 (1974), is another case directly on point. The defendant, Leonard, was arrested by a state trooper without a warrant and was later prosecuted in the county criminal court upon a signed but unverified complaint filed by the state trooper. The court held that this lack of verification deprived the criminal court of jurisdiction, and, therefore, that the judgment of conviction was void:
"The complaint, as stated above, was not verified. Because of such want of verification, the criminal court never acquired jurisdiction, and the conviction of the defendant was void.

"Act No. 467, Acts of Alabama, Reg. Sess. 1957., Vol. 1, which creates the Jefferson County Criminal Court, provides in Section 1 as follows:
"`* * * That no trial or prosecution shall be instituted in this court by indictment, but all trials or prosecutions instituted in said court shall be upon affidavit and warrant as prescribed by law for the institution of trials and prosecutions in the county courts of this State. * * *'
"We held in Hawkins v. State, 20 Ala. App. 285, 101 So. 514, as follows:
"`* * * The only manner provided by law for the commencement of a prosecution in this state is by the finding of an indictment or by the swearing out a warrant based upon probable cause of the officer issuing same. The statute provides a party aggrieved, or desiring to bring a charge of misdemeanor before the county court, may apply to the judge thereof, or to some justice of the peace of the county, for a warrant of arrest, and, upon making affidavit in writing that he has probable cause for believing, and does believe, that an offense (designating the misdemeanor by name, or by some other phrase which in common parlance designates it) has been committed in said county by the accused on the person or property, as the case may be, of A.B. (naming the person injured), then the judge of said court or the justice of the peace shall examine the affiant under oath and other witnesses, if he so desires, touching the offense charged in the affidavit, and, if the court or justice of the peace has probable cause for believing that the offense alleged in the affidavit has been committed, he shall issue his warrant of arrest. Code 1907, ง 6703. (Now Title 13, ง 327, Recompiled Code 1958)'
"We also held in Wetzel v. State, 27 Ala.App. 517, 176 So. 224(3), cert. den. 234 Ala. 610, 176 So. 226, as follows:
"`That part of the Solicitor's complaint filed in the circuit court charging the carrying of a pistol on premises not his own, not being sustained by an affidavit as provided by section 3815 of the Code of 1923 (Now Title 13, ง 327, Recompiled Code 1958), is void, and would not support a conviction. Hawkins v. State, 20 Ala.App. 285, 101 So. 514.'

*1173 "It affirmatively appearing by this record that this prosecution was not begun in the manner which the law directs and provides, and that there can be no trial or conviction of this appellant upon the process shown by the record, a judgment will be here rendered discharging the defendant from further custody in this proceeding. Hawkins v. State, supra."
(Emphasis added.) 52 Ala.App. at 213, 290 So.2d at 673-74.
Most recently, in Nikolic v. State, 439 So.2d 828 (Ala.Crim.App.1983), the Court of Criminal Appeals held that because a traffic ticket was not signed by the arresting officer, it was invalid as an affidavit:
"In the instant case, the traffic ticket was not signed by the arresting officer. That omission renders the printed form invalid as an affidavit and arrest warrant. The requirements set forth in the document call for the undersigned to depose and say that he has probable cause to believe that the person named committed a certain offense.
"Our original opinion held that a traffic ticket would support a forgery conviction because the ticket serves as an appearance bond once the defendant has signed it. Before the ticket can take on that legal characteristic, however, it must first be a valid summons to court. All law enforcement officers issuing a traffic ticket are required to complete and sign the ticket and serve a copy of the completed ticket upon the defendant. A.R.J.A. 19(A)(5)(a). Courts are to accept for filing and disposition those tickets properly issued. A.R.J.A. 19(A)(2)."
(Emphasis added.) 439 So.2d at 829. See also Sellers v. State, 55 Ala.App. 114, 313 So.2d 542 (1975); Ex parte Kelley, 30 Ala. App. 293, 298-99, 4 So.2d 431, 435-36 (1941).
This line of authority clearly points up the viability of the view espoused in Dison. The prospect of this Court's overruling, within a year, one of its own decisions without an exhaustive analysis of the authorities which are in conflict casts doubt on our ability to decide matters of serious consequence in a specific legal frame of reference. Of course, the Court has the power to overrule its decisions, and it is free to so exercise that power in a proper case. Nevertheless, in so doing, it should not "place its foot into a shoe that does not fit."

IV.
Having established that Dison should not be overruled, it does not follow that plaintiff in this case must prevail. To the contrary, under the Constitution of 1901, as amended, plaintiff's remedy for a remission of fines lies with the Board of Pardons and Parole, not with the judicial branch of our state government.
Amendment 38 of the State Constitution took the power to remit fines and forfeitures from the executive branch under Art. V, ง 124, and gave that power to the legislature. Acting under the power of Amendment 38, the legislature gave the power to remit fines to the Board of Pardons and Parole, Tit. 42, ง 16, Code of 1940 (now Code of 1975, ง 15-22-36). See Swift v. Esdale, 293 Ala. 520, 306 So.2d 268 (1975).
For the reasons expressed, I concur in the result of the majority opinion holding that the fines paid cannot be recovered by judicial decree. I dissent from that part of the majority opinion which overrules Dison, supra.
JONES, ALMON and ADAMS, JJ., concur.

ON APPLICATION FOR REHEARING
TORBERT, Chief Justice.
APPLICATION OVERRULED.
MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON, BEATTY and ADAMS, JJ., dissent.
HOUSTON, Justice (responding to motions to recuse).
Betty Ruth Holloway on pages one and two of her motion to recuse stated that I *1174 had not been appointed to the Court when this case was submitted and that I did not sit for oral argument on this case. Both of these statements are erroneous. I became an Associate Justice of the Alabama Supreme Court on September 16, 1985. As an Associate Justice I heard oral arguments in this case on February 10, 1986; and I would caution counsel about making assertions in legal documents which are untrue and which are known, or should be known, by him to be untrue.
Ms. Holloway also contends that I should recuse because my firm represented Barbour County, Alabama. Prior to September 16, 1985, I practiced law with the firm of Houston & Martin, P.C. James L. Martin, who was a member of this firm, was employed by the Barbour County Commission as county attorney for several years prior to my appointment to this Court. Mr. Martin was hired individually; the firm was not hired. He was paid a salary, the amount of which I do not know, directly by the county commission. No portion of this salary was paid to the firm of Houston & Martin, P.C., or to me individually. The amount which Mr. Martin was paid by the county commission was not taken into consideration in determining the amount Mr. Martin was paid by Houston & Martin, P.C. I never attended a county commission meeting or discussed any county business or county litigation with any county commissioner or with Mr. Martin while he was county attorney and I was a member of the firm of Houston & Martin, P.C. (I did pay a courtesy visit to the commission after I was appointed to this Court.) The firm did not handle any litigation against Barbour County, because of Mr. Martin's employment. Mr. Martin informed me that he was not, either as county attorney or as a member of Houston & Martin, P.C., representing Barbour County in any litigation in which a recovery of fines or a vacation of conviction was sought as a result of the Dison case at any time that I was engaged in the practice of law with the firm of Houston & Martin, P.C. Mr. Martin's association with the Barbour County Commission had no effect on my decision in this case, nor did it keep me from holding the balance nice, clear, and true in my deliberations and vote in this case.
I do not think that I should recuse myself. Ms. Holloway's and James Clyde Brown's motions to recuse should be denied.
STEAGALL, Justice (responding to motions to recuse).
Appellant's argument that I had a "direct, personal and pecuniary" interest in the outcome of this litigation while serving as finance director of the State of Alabama prior to my becoming a member of this Court on May 1, 1986, is without merit.
As finance director, my salary was set by the legislature. I cannot understand the argument that such a salaried employee has a "direct, personal and pecuniary" interest in the state's revenues or expenditures.
Appellant further alleges that my son and his law firm have an interest that could be substantially affected by the outcome of this proceeding. While he represents several cities and towns, his remuneration is not contingent upon or related to the outcome of any litigation in which a city or town may be involved, but, rather, is based on retainer and/or work performed. Therefore, it is not reasonable to suppose that my son or his law firm had a direct, personal, and pecuniary interest; it follows, even more clearly, that I had no such interest myself. The current Martindale-Hubbell directory shows that at the time this case was submitted to the Court, I had no involvement with my son's law firm.
I am not, and have not been, in a position to be "substantially affected by the outcome of the proceeding." See Canon 3C(1)(d)(ii), Canons of Judicial Ethics.
Incidentally, it is interesting to note that even the minority opinion, had it prevailed, would not order the repayment of fines.
NOTES
[1] The opinion originally delivered by this Court in Dison was a unanimous decision with Justice Maddox not participating. See 469 So.2d 662. On rehearing, Justice Maddox felt compelled to dissent. Now, Justice Maddox, joined by Justices Houston and Steagall, who joined this Court following the Dison decision, as well as by Chief Justice Torbert and Justice Shores, who have reconsidered their positions, make up the "new" majority, which concludes that Dison was wrongfully decided.
[2] Of course, the majority also relies on a number of decisions from this State in which it finds further support for its conclusion that the lack of verification is a waivable defect. The efficacy of those cases as precedents for Dison and Holloway is discussed at length infra.
[3] The actual holding in Woolf pertained to the issue of venue, the court holding that venue is only territorial jurisdiction which is a personal privilege that may therefore be waived.
[4] Both Holloway and Dison were arrested without warrants. Clearly, any challenge either one may have had to the legality of the warrantless arrest has been waived by their failure to raise it in the district court. Nevertheless, the warrantless arrest did not abrogate the necessity that the officer verify the UTTC, the UTTC serving as both the summons to appear and the complaint. See N. Chiarkas, Alabama Criminal Trial Practice, ง 2-5, at p. 8 (1981):

"After a person arrested without a warrant has been released ..., the officer who made the arrest shall promptly prepare a complaint and present it to the magistrate."
1 Bishop on Criminal Procedure ง 636 at p. 449 (1866):
"[I]f an arrest is made without warrant, in a case where such an arrest is lawful, and the offender is brought before a magistrate, the latter may take jurisdiction and proceed to judgment without issuing a warrant of arrest. For `why issue a warrant for the apprehension of a party already in custody?' But a written complaint or information against the party, setting out his offence, is as necessary in such a case as in any other." (Emphasis added.)
[5] In 1971, the Texas legislature passed the following statute:

"A person represented by legal counsel may in open court or by written instrument voluntarily waive the right to be accused by indictment of any offense other than a capital felony. On waiver as provided in this article, the accused shall be charged by information."
Article 1.141, Vernon's Ann. C.C.P. In King v. State, 473 S.W.2d 43 (Tex.Crim.App.1971), the Texas Court of Appeals upheld the constitutionality of this statute. In that case, the court noted that:
"In the absence of [such a] statute or rule providing for filing of information, a waiver of indictment would not confer power on a court to hear a felony case on information. United States v. Choate, 276 F.2d 724 (5th Cir. 1960); Webb v. Henlery, 74 S.E.2d 7 (Ga. 1953)."
Id. at 49. Thus, the rule stated (in dictum) in Ethridge with respect to indictments (quoted above), is now modified only when there has been a valid waiver. Shepard's citations indicate that Ethridge and Davis, supra, were overruled by King, supra. However, in a footnote, the court in King expressly distinguished Ethridge and Davis:
"Appellant also cites the Texas cases of Ethridge v. State, 76 Tex.Cr.R. 41, 172 S.W. 784 (1915); Davis v. State, 150 Tex.Cr.R. 463, 202 S.W.2d 175 (Tex.Cr.App.1948), holding that an information is a necessary prerequisite to a misdemeanor prosecution in County Court and cannot be waived. We do not deem these cases controlling as to the question presented."
473 S.W.2d at 50, n. 21.
[6] An example of a fatally defective indictment, which is rendered void and not merely voidable, is one which fails to charge an offense. See Barbee v. State, 417 So.2d 611 (Ala.Crim.App. 1982).